14 N.J. Super. 103 (1951)
81 A.2d 413
WILLIAM J. EGAN, AGNES HAUGHEY AND JOHN F. McCABE, PLAINTIFFS,
v.
WILLIAM H. KELLY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 6, 1951.
*104 Mr. Robert L. Hood, attorney for plaintiffs.
Mr. Edward R. McGlynn, attorney for defendant.
COLIE, J.S.C.
In this action the plaintiffs seek to have William J. Egan declared the elected chairman of the Essex *105 County Democratic County Committee and to have William H. Kelly restrained from exercising the prerogatives of chairman. They also ask a declaratory judgment as to the rights and status of William J. Egan and William H. Kelly.
William H. Kelly was elected chairman of the county committee in April, 1950, and thereafter exercised the privileges and performed the duties of the office. In April, 1951, a primary election was held and in accordance with the provision of the statute, R.S. 19:5-3, he gave notice of the annual meeting of the county committee for April 24, 1951, at Essex House, Newark, N.J. Notice was sent to each member-elect by the outgoing chairman of the county committee. The section of the statute above mentioned provides: "* * * at which annual meeting the members of such committee shall elect some suitable person as chairman, to hold office for one year, or until his successor is elected."
The meeting was held in the Elizabethan Room of Essex House and there was present a numerous gathering, estimates varying from 400 to 900. Mr. Kelly, in his capacity of county chairman, called the meeting to order and then stated that he was appointing Mr. James J. McMahon as temporary chairman. The reason for having a temporary chairman was because a contest for the chairmanship was in the offing and Mr. Kelly was a contestant. Immediately after the appointment of Mr. McMahon as temporary chairman, disorder broke out. There was turmoil, noise, confusion and generally unseemly conduct which lasted for more than an hour. At an early stage of the disorder, a motion was made and seconded that a chairman be elected. The chairman did not put the motion to a vote. Thereafter a member of the county committee appealed the ruling of the chairman in appointing a temporary chairman but Mr. Kelly again refused to put the question to the meeting. Thereafter, bedlam reigned. Whenever the chairman attempted to turn over the meeting to Mr. McMahon, disturbance broke out. The most compelling evidence of the disorder was in the form of photographs taken by a news photographer. The pictures show *106 that there was a shouting mob milling about the dais and one photograph shows what clearly was a physical scuffle and struggle for possession of the microphone at the chairman's dais. The plaintiff, Mr. Egan, was prominent in at least two of the pictures. He testified that he led what had been described by other witnesses as "disorder." Thus conditions continued for more than an hour, the chairman endeavoring to restore order so that his appointee might preside, the opposition continuing the demonstration whenever Mr. McMahon undertook to act as temporary chairman. There were periods of relative quiet during which Mr. Kelly, Mr. Egan and others spoke to the assembly. At the end of that period Mr. Kelly announced that he was leaving the meeting and going to a room on the floor below and that all those who were so minded might follow him. There was some dispute as to whether his announcement was that the meeting would "adjourn" to another room.
Upon the retirement of Mr. Kelly and those who followed to the floor below there was held a "continuation" of the meeting which had originally convened in the Elizabethan Room. A temporary chairman took over, tellers of election were designated and a vote was held which resulted, according to Mr. Kelly's contention, in his re-election as chairman of the county committee. There were at this meeting some 648 votes allegedly cast for Mr. Kelly. Parenthetically, the overwhelming majority of the 648 votes were from the suburban areas.
Meantime, those who remained in the Elizabethan Room were not passive. Mr. Edward Gilhooly, a county committeeman from South Orange, was designated to preside. A Mr. Stanton was "elected" temporary chairman. Nominations for county chairman were opened, William J. Egan was nominated and seconded. A motion to close the nominations was offered, seconded and passed and the temporary chairman announced that William J. Egan had been elected county chairman.
*107 The above is a scanty outline of what transpired during the evening but is sufficient to indicate the tenor of the gathering.
The Essex County Democratic Committee either has no constitution or by-laws or their whereabouts are unknown. The statute throws no light on how the proceedings shall be conducted. In the absence of any guide from statute, constitution or by-laws, the commonly recognized rules of parliamentary procedure govern. Fletcher, Cyc. of Corporations, sec. 2012; Hicks v. Long Branch, 69 N.J.L. 300, 302 (E. & A. 1903).
Absent a provision in the by-laws to the contrary, parliamentary procedure calls for the election of a temporary chairman. When Mr. Kelly undertook to exercise his so-called prerogative of appointing a temporary chairman and when he refused to recognize the appeal from the ruling of the chair, he departed from a well established rule of parliamentary procedure. So, also, when later he adjourned the meeting to another room, or retired to another room and there attempted to hold the meeting of the county committee. Whether the second meeting was a retirement or an adjournment the court cannot, from the evidence, be certain. If an adjournment, the presiding officer had no right to declare it since an adjournment of a regularly convened meeting can be had only through action of the meeting itself. Such is the recognized rule as to corporation meetings and we see no reason why it should not be equally applicable to a political meeting. Fletcher, Cyc. of Corporations, sec. 2015. If a retirement, the chairman was without power to withdraw and reorganize elsewhere. The only exception to which the court's attention has been directed along this line is where there is a dire threat of physical harm, riot or the like, the chairman may adjourn the meeting to a place where it may be continued without the threat of physical harm. Such a situation was dealt with in Marvin v. Manash, 153 Pac.2d 251, where the right of the chairman to adjourn the meeting was predicated upon a fear of physical violence which the evidence in *108 this case does not warrant the court in finding. The court finds that the attempt to hold the second meeting was abortive and that the so-called election of Mr. Kelly at that meeting was a nullity.
We must now revert to the continuation of the meeting in the Elizabethan Room, more particularly to determine whether or not Mr. Egan was validly elected. The Democratic County Committee has adopted by custom a form of unit voting. Briefly outlined, the various municipal and ward committees held their meetings the day previous to the county meeting and each sub-committee presumably votes its preference and designates one or more members of the sub-committee to cast a ballot for its choice. There was no substantial dispute in the testimony that such was the customary method of proceeding to the election of a county chairman at the annual meeting. The manner in which the various municipalities or the wards of Newark cast their ballots when the sub-committees met is incapable of discernment from the testimony.
 "For this must ever be
 A secret, kept from all the rest,
 Between yourself and me."
Rex v. Knave of Hearts, Alice, etc., chap. XI.
Apparently resolutions were passed duly authorizing the casting of the sub-committee votes at the county committee meeting. There is in evidence exhibit D-17, a true copy of a motion passed by the Irvington committee. It reads: "That Mr. John McCarthy, Town Chairman of the Irvington County Committee be instructed, by unanimous vote of the members of the Irvington Democratic County Committee of the Town of Irvington, to cast all 88 votes in the best interest of the Democratic Party of Essex County and to cast said votes in the best manner he sees fit for county leader for the year 1951 and 1952." At the voting in the Elizabethan Room meeting, the votes of Irvington were cast by Mrs. Mildred C. Holloran for William J. Egan. *109 Thus it is apparent that of the 706 votes cast for Mr. Egan the aforementioned 88 were cast by one having no authority so to do. We turn now to East Orange which had 120 votes. It is undisputed that these votes were cast for William J. Egan by a Mr. Geiger. The uncontradicted testimony is that East Orange authorized a Mr. Freeman to cast the unit vote for that municipality. Exhibit D-11 is the official resolution to that effect. Thus we find another instance where Mr. Egan was credited with receiving 120 votes, although cast by some one who had no semblance of authority so to do. The foregoing are cited as examples of the strange manner in which the election was conducted, and casts grave doubt as to the votes from other municipalities. To sum up, it is impossible for this court under the testimony to find as a fact that there were sufficient valid votes to elect Mr. Egan county chairman. In arriving at this decision, other irregularities were taken into consideration, such as the use of proxies, some of which were patently invalid, and the fact that the inspectors of election did not examine the proxies and credentials of the persons voting until after the vote was announced, if indeed then.
The judgment of the court is that the election of Mr. Egan was invalid, that the attempted election of Mr. Kelly was a nullity and that Mr. Kelly holds over as chairman of the Essex County Democratic County Committee until his successor is elected in accordance with R.S. 19:5-3.