64 N.J. Super. 51 (1960)
165 A.2d 222
MICHAEL A. BONTEMPO, PETER W. KOCH AND THEODORE LYTWYN, PLAINTIFFS,
v.
DENNIS F. CAREY, JAMES J. McMAHON AND THE ESSEX COUNTY DEMOCRATIC COMMITTEE, DEFENDANTS. GELSTON HINDS, YOLANDA WICKS, NATHANIEL N. SHERMAN, CAROL H. SHERMAN, RUTH KAVESH, ERNESTINE DUNCAN, HARLAN RUDD AND NELDA S. DAVIES, PLAINTIFFS,
v.
JAMES J. McMAHON AND DENNIS F. CAREY, DEFENDANTS. JOHN W. HAYDEN, JR., PLAINTIFF,
v.
MACLYN S. GOLDMAN, DENNIS F. CAREY AND JAMES J. McMAHON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Heard September 7, 1960.
Decided November 7, 1960.
*53 Mr. George S. Hochberg, attorney for plaintiffs Bontempo, Koch and Lytwyn.
Messrs. Konigsberg & Rossmoore (Mr. William Rossmoore, appearing) and Mr. Roger Hinds, attorneys for plaintiffs Hinds, Wicks, Sherman, Sherman, Kavesh, Duncan, Rudd and Davies.
Messrs. Grosso, Beck & Mangino (Mr. Vincent M. Mangino, appearing) attorneys for plaintiff Hayden.
*54 Messrs. Clancy & Hayden (Mr. James C. Conlon, appearing) attorneys for defendants Carey, McMahon and the Essex County Democratic Committee.
Mr. Thomas E. Durkin, attorney for defendant Goldman.
WAUGH, A.J.S.C.
The court has before it motions for summary judgment in each of three consolidated actions, all of which involve the same factual and legal problems; all seek declaratory judgments and general in lieu of prerogative writ remedies.
These matters are an outgrowth of the chaotic events that transpired during a meeting of the Essex County Democratic Committee which had been convened on April 26, 1960 for the purpose of electing a county committee chairman as required by N.J.S.A. 19:5-3. The admitted facts, as they are here pertinent to a general background of the origins of these disputes, give evidence that numerous delegations to the meeting attempted to use a form of unit rule and proxy voting which sparked several strenuous objections from dissident delegation members, and led to a general disorder that ultimately required police intervention. Basically, it is the employment of these two voting devices that gives rise to this litigation, the court being called upon to decide their validity and to determine if the defendant Dennis F. Carey was validly elected chairman of the Essex County Democratic Committee. In the first of these cases there are three plaintiffs: Michael A. Bontempo, Peter Koch, and Theodore Lytwyn. Plaintiff Bontempo, although not an elected member of the county committee, was a candidate for the office of county chairman at the disputed April 26 election, while both plaintiffs Koch and Lytwyn are duly elected members of that body, the former from East Orange and the latter from Irvington.
In the second action, which for the sake of brevity I shall refer to as the "Hinds Action," there are eight plaintiffs, all *55 of whom are duly elected members of the county committee, elected from the Town of Montclair.
The third of these matters has a single plaintiff, John W. Hayden, Jr., also a duly elected member of the county committee. Plaintiff Hayden was elected from the Town of West Orange.
The plaintiffs have named as defendants in these three cases Dennis F. Carey, chairman-elect of the county committee, elected to the post at the April 26 meeting, and James J. McMahon, chairman of the Montclair Municipal Committee and temporary chairman of the election meeting presently under consideration. In addition to Carey and McMahon, the Essex County Democratic Committee has been named as a party defendant in the Bontempo case, while Maclyn S. Goldman, chairman of the West Orange Committee, has been named as a defendant in the Hayden Action.
Generally speaking, the relief sought by the plaintiffs in the first two cases may be tersely stated to be a declaration of the invalidity of the use of unit rule and proxy voting, both at county and municipal levels, and they further seek to set aside the election of defendant Carey as Essex County Committee Chairman. Plaintiff Hayden, while joining with the other plaintiffs on the unit rule and proxy issues, does not seek to disturb the Carey election, nor does his prayer for relief aver that defendant Goldman was elected to the position of municipal chairman through the use of proxies.
With this general background discussion in mind, we now pass to the issues as joined by the pretrial order. Simply stated, they are as follows:
(A) Does a justiciable issue exist so as to permit the court to proceed under the Uniform Declaratory Judgments Act, N.J.S. 2A:16-50, et seq.?
(B) Is the use of unit rule and proxy voting (as described herein) at county and municipal meetings sanctioned by N.J.S.A. 19:5-3, or, alternatively, can the validity of this use be sustained by authorization of county and municipal constitutions and by-laws, or by custom and usage?
(C) In the event that unit rule and proxy voting is found to be invalid, should the court order a re-election for the office of county *56 chairman? If so, under what terms and conditions shall such an election be held, and what is the status of the incumbent pending the results of the re-election?
In addition to these fundamental problems, the defendants have raised the issue of plaintiffs' bad faith in instituting these suits, and further, they have set forth the defense of estoppel alleging that acquiescence in and actual use of the two methods of voting now questioned precludes plaintiffs from attempting to strike down that of which they have heretofore availed themselves.

I.
In determining this matter, a short history and comment on the nature of county and municipal committee membership will be helpful. Prior to 1903, these committees were unregulated by statute. In that year and by virtue of L. 1903, c. 248, s. 6, p. 608, the Legislature declared that any
"county * * * committee * * * may adopt a resolution declaring its desire to have the members of such * * * committee thereafter elected at the primary elections herein provided for; and upon filing a copy of such resolution * * * with the clerks of the several municipalities within such county, it shall be lawful thereafter to elect the members of such county or city committee at said primary elections in the manner provided in this act for the selection of party candidates to be voted for by the voters of a single ward or township."
In 1909 candidates for the county committee were required for the first time to be elected in regularly conducted primary elections. L. 1909, c. 106, p. 159; 2 Comp. St. of N.J. 1709-1910, Elections s. 289, p. 2166. Their election is now provided for by N.J.S.A. 19:5-3 and by virtue of N.J.S.A. 19:1-1, a county committeeman is now considered to be the holder of a "party office."
In Wene v. Meyner, 13 N.J. 185, at pp. 192-193 (1953), Justice Heher, speaking for our Supreme Court, said:
*57 "The political function of a political party and its members involves rights and interests which are subject to legislative regulation for their own protection. * * * the Legislature may safeguard the right of individual voter-participation in the choice of party candidates, in the common interest of the party membership, its concepts and ideals, and thus for the general good and welfare; * * *
Although without constitutional sanction, political parties from the early days of the Republic represented differences of philosophy and thought in relation to governmental policy; and they are now regarded as a necessary adjunct to representative government. * * * The primary is a substitute for the party convention, in an area identified with the essential public interest." (Emphasis added)
The county committeeman has been called a trustee, and his relation to his party and to the other members of that party has been clearly set down. In this regard I consider favorably the very descriptive language of the New York Supreme Court in Application of Roosevelt, 9 Misc.2d 205, 160 N.Y.S.2d 747, 749-750 (Sup. Ct. 1957), affirmed 3 A.D.2d 988, 163 N.Y.S.2d 403 (App. Div. 1957).
"Political parties must function through an organization, and that organization is usually reflected through the channels of the county organization. The county organization is a political institution consisting of all the registered voters of a party in the county represented by a county committee whom they elect under the provisions of the Election Law and whose power as the `regular party organization' is thus conferred upon them by virtue of such election. The county committee and its chairman are, in a sense, trustees of party interests for the registered voters of the party in that county."
Thus we arrive at the crux of the matter May this same committeeman, a trustee of voter rights and interest in party affairs, cast his ballot either by proxy or through the use of a unit rule method?
Before this question may be answered, it is necessary to consider the defendants' theory that the subject matter of this action is not a proper one for declaratory judgment. In this I cannot agree. The contention is advanced on the premise that another adequate remedy is available, namely the ballot box. In other words, the court is asked to decide *58 that when the plaintiffs are able to win over enough county committee members to agree with them, they then can make such changes in the rules as they deem appropriate or, if they so desire, maintain control by employing the same devises we now examine, to wit: proxy voting and unit rule. This seems to the court to be begging the question rather than proving the existence of some other adequate remedy.
In Utility Blade and Razor Co. v. Donovan, 33 N.J. Super. 566 (App. Div. 1955) the Appellate Division, speaking through Judge Clapp, commented:
"N.J.S. 2A:16-52 authorizes declaratory relief `whether or not further relief'  that is, damages, specific performance, or any remedy not merely declaratory in character  `could be claimed.' Accordingly, by the decided weight of authority, a declaratory action is now held to be an alternative or cumulative, not an extraordinary, remedy." (at p. 569)
Applying this pronouncement to the matter at hand, it is clear that a declaratory judgment is proper to determine if unit rule and proxy voting are to be permitted at municipal and county elections and also to determine the corollary question of the validity of the disputed election.
The court has noted that application was made to a Chancery Division Judge late in the afternoon of April 26, 1960 to enjoin unit rule and proxy voting at the very election now contested. This application ultimately was withdrawn.
It is in line with the whole theory of declaratory judgment to consider and render such a declaration at a time when the issue may be considered calmly and unhurriedly and the fullest measure of its tranquilizing effect exploited in the interests of justice. The circumstances of subject matter and time make this case a proper one for declaratory judgment.
Returning to the crucial questions before me, I will first address myself to the definitions of unit rule voting and proxy voting as I understand the defendants' use thereof from arguments presented in the case.
*59 Proxy voting, in short, is a method used by the county and municipal committees by which a member of either body authorizes another, in writing, to cast his vote for a given candidate or issue.
On the other hand, the unit rule is a device by which a municipal committee by the majority vote of its members at the annual meeting the day preceding the county committee meeting binds itself to vote as a unit and vote the total number of such votes (as there are committee members in the municipal unit) for a given candidate or issue. Thereafter, at the meeting of the county committee, the municipal chairman, when the roll is called, votes all of the municipal vote, whether individual members are present or absent, according to majority wishes. A duly elected member of that municipal committee  and no one else  may then seek recognition and demand that his delegation be polled. Only a member of a delegation has the right to demand that a poll be taken of his delegation, and a member of one delegation may not demand a poll of the votes of another delegation.
From this point on the defendants contend that there are three alternative procedures that may be followed. First, they say that the polling is of dissidents only, each standing in turn and declaring how he wishes his vote recorded. All of the remaining votes, including absentees, are then counted in accordance with the unit rule resolution. Secondly, they argue that each member of the municipal committee is polled and each is then recorded according to his vote, but anyone not answering the roll call will be recorded automatically with the majority as announced by the chairman. Finally, it is contended that if the second alternative is found to be unsound, then the municipal committee chairman has the right to vote the absentees by proxy.
As authority for the validity of unit rule voting and their theory that only delegation members can question the vote of their delegation, the defendants refer to Demeter, Manual *60 of Parliamentary Law and Procedure (Univ. ed., 1953) Ch. XXIV, para. 26, p. 239, which states as follows:
"When delegates have been instructed to vote as a unit, a poll is taken within the delegation in each case; a majority vote therein determines the will of the unit. The delegation chairman announces all votes, and in his absence one chosen by it for the purpose. If a member of the delegation defies, or wishes to depart from obedience to, the unit rule, as soon as the delegation chairman announces the delegation's vote to the convention the defiant delegate promptly rises and, addressing the convention chairman, says: `Mr. Chairman, I demand (or request) a poll of my delegation,' and when his name is polled, he may then vote as he desires."
But see Demeter, supra, c. III, p. 39 (doubting the vote); Roberts, Rules of Order (rev. ed., 1915) § 46, p. 190 (requiring a division of the assembly); also, Roberts, supra, pp. 199-200 (where it is stated that in a strictly deliberative assembly a member must be present to vote when the issue is put to the assembly).
Emphasis also has been placed on the opinion in Egan v. Kelly, 14 N.J. Super. 103 (Law Div., 1951), wherein Judge Colie, addressing himself to the manner by which county committee meetings should be conducted, remarked:
"In the absence of any guide from statute, constitution or by-laws, the commonly recognized rules of parliamentary procedure govern." (at p. 107)
The defendants cite that as authority for their reliance upon Demeter, supra.
"The Democratic County Committee has adopted by custom a form of unit voting. Briefly outlined, the various municipal and ward committees held their meetings the day previous to the county meeting and each sub-committee presumably votes its preference and designates one or more members of the sub-committee to cast a ballot for its choice. There was no substantial dispute in the testimony that such was the customary method of proceeding to the election of a county chairman at the annual meeting." (at p. 108)
It is on this passage that the defendants rely for their contention of the validity of unit rule voting. Finally, it *61 is agreed that authority can be found in the following for the use of proxy votes:
"In arriving at this decision, other irregularities were taken into consideration, such as the use of proxies, some of which were patently invalid * * *." (at p. 109)
The complaint in Egan v. Kelly, supra, was for a restraint against the defendant Kelly from exercising the prerogatives of chairman, and for a "declaratory judgment as to the rights and status" of both parties. Although mentioned (as an irregularity I might note) the use of proxy voting and unit rule voting was not directly in issue and any pronouncement thereon in the above quoted language is, of course, obiter.
In Egan, supra, the finding was that the court was unable "to find as a fact that there were sufficient valid votes to elect Mr. Egan county chairman," that "the attempted election of Mr. Kelly was a nullity" because the presiding officer had no right to declare an adjournment, and if there was "a retirement, the chairman [Mr. Kelly] was without power to withdraw and reorganize elsewhere."
In the final analysis, the problem here is one of statutory construction, the cardinal rule of which is to ascertain the intent and purpose of the Legislature. Lynch v. Borough of Edgewater, 8 N.J. 279 (1951); Grobart v. Grobart, 5 N.J. 161 (1950); Blackman v. Iles, 4 N.J. 82 (1950); Richman v. Blank, 45 N.J. Super. 272 (Law Div. 1957).
Notwithstanding my recognition of the principles that the election laws are to be liberally construed to effectuate their purpose, Kilmurray v. Gilfert, 10 N.J. 435 (1952), and that courts are reluctant to interfere with party machinery so long as it conforms to statutory provisions, I am bound to conclude that the methods used to cast the vote in this case were contrary to legislative intent, and therefore invalid.
I reach this conclusion for several reasons. As I read it, N.J.S.A. 19:5-3 clearly provides the manner by which *62 the county chairman and vice-chairlady are to be elected. It states that members of the county committee are to be elected annually in "each unit of representation"; each member "shall actually" reside in the district he represents; the members shall take office on the first Saturday following their election and that at the annual meeting "the members * * * shall elect some suitable person as chairman * * * and * * * vice-chairlady." (Emphasis added) Thus, as I view the statute, this section requires the committeemen to be present so that they may cast their votes personally. That this is so is reflected by the fact that the Legislature has seen fit to place the obligation and duty of electing upon the members themselves ("members * * * shall elect"), and does so in mandatory rather than permissive terminology. In addition to this, it is of no little significance that the statute provides that notice be given each member of the time and place of any meeting called on any day other than that specifically fixed therein. In view of the evidence of the legislative scheme, to hold otherwise would be to violate the plain meaning and intent of the section in question.
In addition to the foregoing, it goes without saying that an election of a chairman presupposes nomination, discussion, and exchange of views, all of which must be accomplished at the election meeting. As Roberts, supra, says at § 46, p. 199:
"In a strictly deliberative assembly no member can vote who is not present when the question is completely put."
It appears to me that the organization meeting is such an assembly and that the Legislature intended the committeemen to be present to enter into the discussion and take part in the election. To allow unit rule and proxy voting in the absence of legislative approval is to permit an abdication from the position of trust ascribed to a committeeman, since as a repository of the party members' interest and rights in *63 party management (at least those members of the unit from which he was elected) he could not adequately discharge his obligations to those party members were he, in effect, to cast his vote at a time prior to that when party business reaches the convention floor.
It is true that candidates for the chairmanship often are known in advance of the election date, but it is equally true that a discussion of the relative merits of each candidate generally precedes the balloting. In a deliberative assembly such as this, there ought to be the right to convince and be convinced.
Of no little weight in the decision on this issue is the case of O'Brien v. Fuller, 93 N.H. 221, 39 A.2d 220, 224 (Sup. Ct. 1944). There the phrase "shall elect," as used in a statute requiring election of a county committee by party nominees and state convention delegates, was construed to require an election where those having the right to vote had to appear and cast their votes in person.
"The statutory mandate under consideration is direct and concise: those to whom the duty of selecting a county committee is entrusted `shall elect' that committee. Voting is generally held to be a personal act which cannot be performed by an agent, and it is a fair inference from the language of section 60 that `personal execution' of the duty thereby imposed was intended."
Similarly persuasive is the case of State ex rel. Green v. Holzmueller, 1 Terry 16, 40 Del. 16, 5 A.2d 251, 253 (Super. Ct. 1939), where the court stated:
"At the common law the right of franchise conferred on a member of a municipal corporation was considered as one in the nature of a personal trust committed to the judgment and discretion of the member as an individual and was not delegable. * * * the Legislature has the power to delegate the right and to extend to voters the privilege of voting by proxy."
The court then went on to say that the power of delegation must be granted "in express terms." (5 A.2d at p. 254)
In New Jersey, our own courts have spoken out on the *64 question of the duties of those with representative status. In Schwartze v. City of Camden, 77 N.J. Eq. 135 (Ch. 1910), the delegation by a municipal committee of the power to purchase land was held invalid. A few of the remarks of the court recorded in that case are here pertinent.
"* * * where the Legislature confers upon the legislative body of a municipality a power of such inherent quality, or in such manner that the exercise of the power in accordance with the legislative intent may be reasonably said to include the deliberative and concerted judgment and discretion of the members of the municipal legislative body, I think there can be found in the adjudicated cases no justification for a delegation of the discretion so conferred." (77 N.J. Eq., at p. 140)
"Such delegation of power and discretion is in fatal derogation of the trust which the Legislature has bestowed upon the municipal legislative body." (77 N.J. Eq., at p. 141)
Consider also the law of private corporations where we find that proxy voting historically has been considered to be a creature of statute, unknown at Common Law. In re Schwartz and Gray, 77 N.J.L. 415 (Sup. Ct. 1909).
Part of the defendants' difficulty arises from a confusion between the municipal committee and the county committee. They suppose that binding commitments (in this case, unit rule voting) can be made by the former upon the latter at the county meeting. A close scrutiny of R.S. 19:5-2 and N.J.S.A. 19:5-3 discloses that the two organizations are statutorily separate and distinct entities rather than one being a part of the other. It is true that municipal committeemen are members of the county organization, but each body has its particular sphere of activity and each has its own by-laws and constitution under and through which their respective functions are carried out. Neither section gives to the municipal chairman the right to represent the municipality at the county level, nor do they allow the municipal committee to bind itself in advance of the county meeting to a designated manner of voting at that meeting.
N.J.S.A. 19:5-6, providing that where there are objections to planks in party platforms the vote on the objection *65 shall be by the "`ayes' and `nays' of the members * * * present and voting," should be mentioned at this point.
Although the defendants did not urge that all sections of Chapter 5 must be read in pari materia, and that since only section 6 specifies a manner or method of voting, municipal and county committees are left free to adopt any recognized parliamentary form of voting, I have considered this theory in arriving at my decision and I find no irreconcilable inconsistencies between section 6 and what I have said heretofore concerning section 3.
In the first instance, it seems clear that the Legislature intended not only that the chairman and vice-chairlady be elected by the committeemen, but also that in the matter of something as fundamental as the party's political philosophy as proclaimed in its platform, the votes must be recorded in the manner specified. Furthermore, section 6 concerns itself basically with the manner in which the votes are to be recorded. This is an entirely distinct problem from the question of whether or not committee members must be present to vote for the county committee chairman. The question of how the vote should be recorded has not been raised and I do not decide it. My decision is limited to a declaration that committee members must be present to cast their votes at county and municipal meetings and that proxy voting or unit rule voting may not be used.
The extent to which the conduct of the April 26 election departed both from the principles of trust imposed upon committeemen and usual parliamentary methods is reflected amply in the admitted facts. The parties concede that only 450 to 500 persons (county committeemen) were physically present at the meeting, see defendants' answer to interrogatory no. 2, affidavit of Dickenson R. Debevoise, para. 4, yet the official minutes of the meeting (defendants' Exhibit XXIV) reflect that Mr. Carey received 1047 votes and Mr. Bontempo 77. There is no dispute but that proxy and unit rule votes were used in the election and, as is indicated in these minutes, all of the 1047 votes cast for Mr. Carey *66 were cast by unit rule method, while 74 of Mr. Bontempo's votes were apparently cast either by unit rule or proxy votes.
The minutes further reveal that "due to disorder" four municipalities were not called upon to vote; that a point of order of Mr. Noah Marshall, a duly elected County Committeeman, was summarily rejected and that "Mr. Carey promptly adjourned the meeting due to the disorder created by the supporters of Mr. Michael Bontempo." There it is manifest that the chairman pro-tem, defendant McMahon, was not allowing anyone to object to or doubt the vote at large.
The above cited case of Egan v. Kelly is authority for the proposition that the presiding officer had no right to declare the meeting completely adjourned since an adjournment of a regularly convened meeting can only be had through action of the meeting itself. The exception to this rule, as noted in Egan, is that dire threat, riot or the like warrants adjournment by the chair to a place of safety. This exception was not adhered to here and the meeting ended with finality without the fulfillment of the statutory duty of electing a vice-chairlady.
Thus, the admitted facts require the conclusion that this election was conducted in a manner violative of statutory and parliamentary requirements, and therefore it is a nullity. The mandates of N.J.S.A. 19:5-3 must yet be met. Accordingly, the defendant Carey is hereby ordered to convene a meeting of the Essex County Democratic Committee within 30 days of the entry of judgment in this matter for the purpose of electing a county committee chairman and vice-chairlady in accordance with the views expressed in this opinion. That this defendant continues to serve in the capacity of chairman until the results of the re-election are made known has been conceded by the plaintiffs in the "Hinds Action" and has been well defined by Egan v. Kelly, supra, and by the rationale of Ringle v. Republican State Committee, 122 N.J.L. 435 (Sup. Ct. 1939). Implicit in the statutory phrase "until his successor is elected" is the requirement that the successor be chosen in an election untainted *67 with illegality, which, as we have seen, is not the situation here.

II.
Because of the conclusions I have reached regarding the April 26 election and the use of unit rule and proxy voting, it is unnecessary to determine the contents of the allegedly lost or misplaced by-laws of the Essex County Democratic Committee, since the statutory prohibition would negate any authorization in the by-laws to vote by unit or proxy.
It is interesting to note only that in Egan v. Kelly, supra, the court in 1951 made reference to the fact that the "Essex County Democratic Committee either has no constitution or by-laws or their whereabouts are unknown." (14 N.J. Super., at p. 107)
It would seem to the court that such basic documents of one of our great political parties would be deposited in some safe place to be zealously guarded against mishap, and that copies would be made available for each member of the county committee for his guidance in acting in party affairs.
Perhaps one solution to obviate the recurrence of this unfortunate situation would be to require that copies of these documents, and all amendments thereto, be filed by every political party with the appropriate County Clerk. This, however, is strictly a matter of legislative concern into which I do not intrude.

III.
The remaining issues as set forth at the outset of this opinion do not pose serious problems and, although they are now somewhat moot, I will discuss them since they have been raised by the parties.
N.J.S.A. 19:29-1, et seq has provided that nominations and elections to public office or party position may be the subject of challenge. In a case such as this the Legislature has decreed that an action contesting the validity of an election may be initiated in the Superior Court by the *68 filing of a verified petition by the "defeated candidate for such * * * party position." N.J.S.A. 19:29-2. It is manifest then that plaintiff Bontempo has sufficient standing to bring his action before the court. It has not been suggested that he was not "a proper person" within the purview of N.J.S.A. 19:5-3.
Finally, I conclude that the defenses of bad faith and estoppel are ill-founded and without merit. Suffice it to say that nothing has come to my attention from the affidavits or other moving papers to display or warrant the drawing of any inference of bad faith on the part of the plaintiffs. Likewise, I do not attach any validity to the argument that the plaintiffs by their past conduct have estopped themselves from protecting their rights under the Election Laws from violation.
In dealing with the question of laches and its effect in a suit which alleged the unconstitutionality of the Apportionment Act, L. 1941, c. 310, N.J.S.A. 52:10-1, Justice Francis in Asbury Park Press, Inc. v. Woolley, 33 N.J. 1, 14 (1960) commented:
"Acquiescence for no length of time can legalize a clear violation of duty where the people have plainly expressed their will in the Constitution and have appointed judicial tribunals to enforce it."
The rationale of this pronouncement applies here with equal force. Our inquiry has been directed to the legal "essence" of unit rule and proxy voting, in a matter which Justice Heher says is "identified with the essential public interest," and no manner of action or inactivity by the plaintiffs can change that essence before the law. Moreover, to hold that the plaintiffs are precluded at this juncture from raising the invalidity of proxy and unit rule voting would be to deny them the forum expressly established by the Legislature of this State. I therefore hold that neither acquiescence in, nor prior use of, or voluntary participation in the use of proxy or unit rule voting can foreclose these plaintiffs from their day in court.
*69 By way of summation, I declare:
1. Unit rule voting and proxy voting to be invalid both at municipal and county committee organization meetings held pursuant to N.J.S.A. 19:5-3, and R.S. 19:5-2.
2. The election of Mr. Carey on April 26, 1960 was a nullity. A new election must be held for the office of the Chairman of the Essex County Democratic Committee in accordance with what has been said herein.
3. Mr. Carey shall continue to serve as county committee chairman until his successor is duly elected.
4. Mr. Bontempo's status as a candidate for the county committee chairmanship is sufficient to give him standing to be a party to this action.
5. The defense of plaintiffs' bad faith is without merit, and finally,
6. Neither prior use of proxy votes nor use of or participation in unit rule voting estops the plaintiffs from now contesting the validity of their use.