UNION COUNTY BOARD OF CHOSEN FREEHOLDERS, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. THE UNION COUNTY PARK COMMISSION, A BODY POLITIC OF THE COUNTY OF UNION, DEFENDANT-APPELLANT.

Argued November 18, 1963—Decided January 20, 1964.

Mr. *Frederick C. Kentz, Jr.* argued the cause for the appellant (*Messrs. Kentz, Kentz & Gilson,* attorneys).

Mr. *Leo Kaplowitz* argued the cause for the respondent (*Mr. H. Lee Sarokin,* Assistant County Attorney, on the brief).

The opinion of the court was delivered by

JACOBS, J. The plaintiff Board of Freeholders instituted a declaratory judgment action seeking a determination of its right to certain capital funds in the possession of the defendant Park Commission. Summary judgment was entered in favor of the plaintiff. See 77 *N. J. Super.* 425 (*Law Div.* 1962). The defendant appealed to the Appellate Division and we certified before argument there.

Through various transactions, the Park Commission acquired a sizable tract of land in Roselle Park which it used for park purposes. The original cost was $35,719, paid for from funds furnished by the Board of Freeholders in accordance with *R. S.* 40:37–129. See *Union County Park Com. v. Board of Chosen Freeholders,* 3 *N. J.* 73 (1949). Apparently the Board of Education of Roselle Park needed the land

for the construction of a high school and it negotiated with the Park Commission for an exchange or a purchase. The Park Commission represents that an exchange was impossible since no other suitable land was available in Roselle Park and that although it was reluctant to do so it agreed, because of Roselle Park's great educational need, to sell the land for $150,000 intending "that the proceeds of the sale be used as a vehicle of exchange to acquire other park land." A resolution authorizing the sale and finding it to be in the public interest was duly adopted by the Park Commission in January 1962 and a copy of its resolution was sent to the Board of Freeholders in compliance with *N. J. S. A.* 40:37-146.1. The sale was consummated in February 1962, the purchase price of $150,000 was received by the Park Commission and, as the Law Division found, it "proposes to apply these funds for the purchase of additional park lands." 77 *N. J. Super.*, at p. 430.

After the Park Commission had received the proceeds of the sale, the Board of Freeholders demanded that they be forwarded to it but the demand was refused. The Board of Freeholders then filed a complaint which was met by an answer denying the plaintiff's standing to maintain the action and asserting that the Park Commission has the right to retain the proceeds for the purpose of acquiring additional park land in replacement of that which had been sold. On the standing issue the Law Division properly found against the defendant. See 77 *N. J. Super.*, at *pp.* 431-433. There was an actual controversy between the parties which involved differing viewpoints as to the meaning of applicable statutory provisions. The situation clearly came within the orbit of the Uniform Declaratory Judgments Act (*N. J. S.* 2A:16-50 *et seq.*) which was designed to "settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *N. J. S.* 2A:16-51. Any judicial hostility to its use is a thing of the past for the act is now well-recognized as remedial in nature and entitled to liberal construction and administration. See *National-Ben Franklin*

*Fire Ins. Co. v. Camden Trust Co.,* 21 *N. J.* 16, 20–23
(1956). The defendant contends in effect that the Board of
Freeholders has no interest in the funds possessed by it and
therefore has no standing to maintain the action. But the
question of whether it has an interest is the meritorious issue
which the Board is entitled to have judicially determined;
the declaratory judgment proceeding it chose for such deter-
mination was an appropriate one. *Cf. New Jersey Turnpike
Authority v. Parsons,* 3 *N. J.* 235, 239–241 (1949); *Abbott
v. Beth Israel Cemetery Ass'n of Woodbridge,* 13 *N. J.* 528,
540–542 (1953).

In dealing with the merits of the controversy, the
lower court and the parties agreed that, unlike other situa-
tions which are governed by explicit statutory directions (see,
*e. g., N. J. S. A.* 40:37–95.38), there is no such guide with
respect to the handling of proceeds received by a park com-
mission from a sale under *N. J. S. A.* 40:37–146.1. The mat-
ter therefore becomes one of ascertaining and effectuating the
legislative purpose as the court may best gather it from such
pertinent statutory materials as are available. In aid of the
court's search, rules of statutory construction may be re-
ferred to although they are always to be subordinated to the
ultimate goal of carrying out the wishes of the Legislature.
See *State v. Provenzano,* 34 *N. J.* 318, 322 (1961); *cf.
Fidelity Union Trust Co. v. Robert,* 36 *N. J.* 561, 567–568
(1962). Here the lower court's construction of the pertinent
statutory materials led it to the conclusion that the Board of
Freeholders is entitled to the $150,000 now in the possession
of the Park Commission; in reaching its conclusion it took a
construction approach which we disapprove.

The Law Division held that *R. S.* 40:20–1 should be con-
strued liberally in favor of the Board of Freeholders while
the statutory grant of power to the Park Commission should
be construed strictly. See 77 *N. J. Super.* 434–435. *R. S.*
40:20–1 provides that the property, finances and affairs of
any county shall be managed, controlled and governed by the
county board of freeholders "except where by law any such

powers or duties are imposed upon or vested in another board, committee or department of the county." Here the property and management of the county park system were clearly vested by law (*R. S.* 40:37–96 *et seq.*) in the Union County Park Commission, a body politic described judicially as autonomous in nature. See *Union County Park Com'n v. Board of Chosen Freeholders, supra,* 3 *N. J.,* at *p.* 80; *Hill v. Borough of Collingswood,* 9 *N. J.* 369, 375 (1952); see also *Wall v. Hudson County Park Com.,* 80 *N. J. Super.* 372 (*App. Div.* 1963), certif. denied 41 *N. J.* 198 (1963), where the court, after referring to the broad statutory powers vested by the Legislature in county park commissions, noted that while their funds are derived from the freeholders, they are autonomous bodies with complete power "to govern and control the establishment, operation, maintenance and use of public parks" within their jurisdiction. 80 *N. J. Super.,* at *p.* 377.

■ The acts relating to park commissions should not be construed strictly but should be construed liberally to the end that the commissions may fairly and fully achieve their assigned tasks. See *Cammarata v. Essex County Park Comm'n,* 46 *N. J. Super.* 262, 270 (*App. Div.* 1957), aff'd 26 *N. J.* 404, 411 (1958); *cf. Bechler v. Parsekian,* 36 *N. J.* 242, 249–250 (1961); *Allendale Field & Stream Ass'n v. Legal Games of Chance Control Comm'n,* 41 *N. J.* 209 (1963). In *Cammarata,* question was raised as to whether a county park commission had power to establish a probationary system for its patrolmen. This Court held that it had such power although there was no specific statutory language to that effect; Justice Wachenfeld had this to say:

"The grant of an express power is always attended by the incidental authority fairly and reasonably necessary or appropriate to make it effective. *Lane v. Holderman, supra,* 23 *N. J.* 304, at *page* 315; *Jersey City v. State Water Policy Comm.,* 118 *N. J. L.* 72 (*E. & A.* 1937); 3 *Sutherland, supra,* at § 6604; 73 *C. J. S., Public Administrative Bodies and Procedure* § 50. See *Tanis v. Passaic County,* 126 *N. J. L.* 303, 305 (*E. & A.* 1940); *Belfer v. Borrella,* 9 *N. J. Super.* 287, 293 (*App. Div.* 1950). Authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment

of the legislative intent. 42 *Am. Jur.*, *supra*, at § 26. The purpose of the statute is not to be frustrated by an unduly narrow interpretation." 26 *N. J.*, at *p.* 411

 In the course of its opinion the Law Division placed reliance on *Article* IV, § VII, *par.* 11 of the Constitution which directs that laws concerning municipalities and counties be liberally construed in their favor. That provision was intended to obviate earlier judicial decisions which had taken the position that grants of power by the Legislature to its political subdivisions should be construed narrowly and that doubt as to the existence of any asserted power should lead to its denial. See *Meday v. Rutherford,* 65 *N. J. L.* 645, 648 (*E. & A.* 1901) ; *Atlantic Coast Elec. Ry. Co. v. Public Utility Board,* 92 *N. J. L.* 168, 169 (*E. & A.* 1918) ; *Public Service Elec. & Gas Co. v. Camden,* 118 *N. J. L.* 245, 255–256 (*Sup. Ct.* 1937) ; *N. J. Good Humor, Inc. v. Board of Com'rs of Bradley Beach,* 124 *N. J. L.* 162, 164 (*E. & A.* 1940). It may well be that the breadth of the constitutional language would apply to the legislative grant of power to a county commission as well as to the grant of power to a county board of freeholders. See *Cammarata v. Essex County Park Comm'n, supra,* 26 *N. J.,* at *pp.* 410–411; but *cf. Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433, 490 (1952). In any event, it would appear that in view of its clear purpose, the constitutional provision may not properly be invoked to support the position that *R. S.* 40:20–1 is to be construed favorably to a county board of freeholders as against a county park commission.

Leaving the abstract rules of statutory construction, we come now to the specific provisions of the law governing the Park Commission's operations. *R. S.* 40:37–96 *et seq.* Its capital funds come from bonds issued by the Board of Freeholders which, under *Union County Park Com. v. Board of Chosen Freeholders, supra,* has discretionary power to approve or reject the Commission's requisitions for such funds. But as Chief Justice Vanderbilt pointed out in that case, once the funds are appropriated, the Park Commission alone is em-

powered to decide how they should best be expended. 3 *N. J.,* at *p.* 80. The Commission is designated in *R. S.* 40:37–99 as a body politic with power to sue and be sued; by *R. S.* 40:37–101 it is broadly vested with power to acquire, maintain, preserve and improve the county park system; and by *R. S.* 40:37–152 it is broadly vested with rule-making powers. It is authorized to acquire real estate by purchase, gift, devise or eminent domain (*R. S.* 40:37–101); deeds of conveyance are to be made to it in its corporate name (*R. S.* 40:37–101); it may lay out and improve suitable roadways and boulevards and condemn lands therefor (*R. S.* 40:37–104 *et seq.*); and it may levy assessments for special benefits and sell lands for unpaid assessments (*N. J. S. A.* 40:37–117 *et seq.*). While none of the foregoing provisions bears directly on the issue at hand, they serve to emphasize the sweep of the legislative purpose in authorizing the organization of park commissions as independent county instrumentalities with comprehensive powers and responsibilities for the successful establishment and maintenance of county park systems. *Cf. Wall v. Hudson County Park Com., supra,* 80 *N. J. Super.,* at *pp.* 376–377.

Reference has been made to *R. S.* 40:37–129 and *R. S.* 40:37–133 and they were dealt with by the Law Division in its opinion. See 77 *N. J. Super.,* at *pp.* 438, 441. They seem to shed little light one way or the other although *R. S.* 40:37–133 reinforces the underlying obligation of the Commission to keep and maintain its park system perpetually for the public benefit without extraneous diversions. *Cf. Hill v. Borough of Collingswood, supra,* 9 *N. J.,* at *p.* 372. More pertinent are the statutory provisions which specifically empower the Commission to exchange real estate for park improvement (*R. S.* 40:37–146) and to sell real estate to public bodies (*N. J. S. A.* 40:37–146.1). *R. S.* 40:37–146 provides that, within specified limits, the Commission may exchange real estate for the purpose of straightening or rendering symmetrical the boundaries of any park owned by it. *N. J. S. A.* 40:37–146.1 provides that the Commission may sell part of

its real estate to the State of New Jersey, or to the county or municipality in which the real estate is situated, "provided the members of the park commission shall by resolution approve such sale as in public interest, and shall certify such resolution to the board of chosen freeholders."

The last cited statute was undoubtedly intended to take care of cases such as the one at hand where the park land was needed for a public high school. The Legislature did not specifically direct what should be done with the proceeds, but it could hardly have intended that the Commission be deprived of all power to use the proceeds, contemporaneously or as expeditiously as the circumstances permit, to purchase land in replacement of the land sold. Such deprivation would make little sense for it would run directly counter to the many clear legislative expressions which show very high concern for the preservation, maintenance and improvement of county park systems. In construing the statute, every effort should be exerted to avoid such an anomalous result. *Cf. Robson v. Rodriquez,* 26 *N. J.* 517, 528 (1958) ; *New Capitol Bar & Grill Corp. v. Division of Employment Sec.,* 25 *N. J.* 155, 159–160 (1957).

It may here be noted that *N. J. S. A.* 40 :37–146.1 expressly allows a sale from the Commission to the Board of Freeholders (see *L.* 1961, *c.* 108) ; it would indeed be strange if upon such sale the proceeds received by the Commission would have to be returned immediately to the Board, yet that is the precise position advanced by the Board. The notion that such was the legislative intent may readily be rejected thus lending strength to our view that a fair interpretation of the statute calls for the conclusion that the Commission may properly retain the proceeds for the purchase of land in replacement of the land sold to Roselle Park.

Finally, the Board contends that the requirement of notice or certification embodied in *N. J. S. A.* 40 :37–146.1 indicates that there must be some action on its part before the Commission may use the proceeds to purchase other park land. See 77 *N. J. Super.,* at *p.* 442. The statute does not

contain a requirement for Board action and nothing in the notice or certification provision has that effect. Since the Board has the responsibility for passing on the Commission's annual budget requests, it is wholly appropriate that it have the notice or certification called for by the statute. But the provision for notice or certification, without more, does not suggest any requirement of Board approval or concurrence such as is specifically set forth in other statutory enactments (see, *e. g., N. J. S. A.* 40:37–95.38); if the Legislature should consider that such approval or concurrence is desirable, it may readily amend or supplement *N. J. S. A.* 40:37–146.1.

Reversed. No costs.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.