643 A.2d 654

STATE IN THE INTEREST OF O.G.

Superior Court of New Jersey
Chancery Division Family Part
Hudson County

Decided December 8, 1993.

*Verna Leath,* Hudson County Deputy Public Defender (*Patricia Vogler,* Asst. Deputy Public Defender) for the juvenile.

*Carmen Messano,* Hudson County Prosecutor (*Mark Groninger,* Assistant Prosecutor) for the State.

JOSE L. FUENTES, J.S.C.

In this case the court is asked to decide if a victim of a crime for which a juvenile has been adjudicated delinquent may personally address the court prior to its sentencing of that juvenile. The issue presented appears to be one of first impression, and this opinion expands upon the court's ruling from the bench on December 8, 1993.

On October 20, 1993, O.G. plead guilty to acts which, if committed by an adult, would constitute Second Degree Aggravated Assault in violation of *N.J.S.A.* 2C:12–1b(1), recklessly causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life. The basis for his plea consisted of the following facts. On November 23, 1992, O.G. was one of a group of juveniles who were throwing rocks from the roof of a multistory residential building, into a pedestrian passageway below. O.G.'s rock struck a jogger on the head, causing her

serious physical injuries.  O.G. admitted that he had seen the victim as she ran along the road, but asserted that he thought she was out of danger at the time he threw his rock.

At sentencing, on December 8, 1993, the State moved for permission for the victim of this assault to personally address the court before sentencing the juvenile.  O.G. objected, arguing that victims should not be permitted to address a sentencing court in juvenile matters.  He grounded his objection in the terms of *N.J.S.A.* 2A:4A–42c.  That section of the Juvenile Code provides that, as part of the predispositional evaluation of a juvenile:

> **The predisposition report ordered pursuant to the Rules of Court may include a statement by the victim of the offense for which the juvenile has been adjudicated delinquent** or by the nearest relative of a homicide victim.  The statement may include the nature and extent of any physical harm or psychological or emotional harm or trauma suffered by the victim, the extent of any loss to include loss of earnings or ability to work suffered by the victim and the effect of the crime upon the victim's family.  (emphasis added)

O.G. argues that, since this section provides, in great detail, for permitted *written* statements by victims as part of the standard predisposition report, the omission of any provision for oral statements was deliberate, and oral statements should thus be excluded.  In further support of his argument, O.G. correctly points out the lack of any other provision in the Juvenile Justice Code which expressly authorizes such oral statements.  However, this does not automatically mean that *N.J.S.A.* 2A:4A–42c is controlling or dispositive in this case.  The subsequent enactment of an amendment to the Crime Victims Bill of Rights, which deals specifically with oral statements by crime victims to sentencing courts, sheds light on the legislature's intentions in this area.

The New Jersey State Legislature enacted the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38, in 1985.  In 1991, *N.J.S.A.* 52:4B–36 was amended to specifically provide that:

> crime victims and witnesses are entitled to the following rights ... n.  **To make, prior to sentencing, an in-person statement to the sentencing court concerning the impact of the crime.**
>
> This statement is to be made in addition to the statement permitted for inclusion in the presentence report by N.J.S. 2C:44–6.  (emphasis added)

The emphasized portion of the above statement appears to be unambiguous. A victim of a crime is to be afforded the opportunity to address the court before it sentences the individual convicted of that crime. Because of certain language used in the statute, however, (see discussion, *infra,* pages 185 *et seq.,* 643 *A.*2d pages 656 *et seq.*) it is questionable whether it should apply in cases where the individual being sentenced is a juvenile adjudicated delinquent in the family court. This court must construe the Crime Victims Bill of Rights, and decide whether the legislature intended to grant those rights to all victims of crime, or just to those victims of crimes committed by adults.

Nowhere in the Crime Victims Bill of Rights are victims of juvenile offenses expressly excluded from the protected class of persons created by the statute. The question, then, is whether there is an implied exclusion evident in the language chosen by the legislature. Specifically, in the context of the case at bar, this court must decide if *N.J.S.A.* 52:4B–36n should be applied to sentencings of juvenile delinquents in family court. The best argument against such an application is within the language of the provision itself. The second paragraph reads:

This statement is to be made in addition to the statement permitted for inclusion in the presentence report by **N.J.S.** 2C:44–6. (emphasis added)

*N.J.S.A.* 2C:44–6 is the Criminal Code's counterpart to *N.J.S.A.* 2A:4A–42c. Both sections contain almost identical provisions for the submission of presentence reports which may contain written statements by victims describing the effect the crime had on the victims or their families. The legislature's instruction in *N.J.S.A.* 52:4B–36n regarding *N.J.S.A.* 2C:44–6 is clear. However, the specific mention of that provision, to the exclusion of its counterpart in the Juvenile Justice Code, can be interpreted to raise the inference that *N.J.S.A.* 52:4B–36n is not to be applied where the victim is seeking to address a court sentencing a juvenile, not an adult.

■ In deciding how to construe the statute at issue, the court takes note that it is a well entrenched principle in our jurisprudence that rules of statutory construction are always to be subor-

dinated to the ultimate goal of carrying out the wishes of the legislature. *Union County Bd. of Chosen Freeholders v. Union County Park Commission,* 41 *N.J.* 333, 196 *A.*2d 781 (1964); *Borough of Highlands v. Davis,* 124 *N.J.Super.* 217, 305 *A.*2d 814 (Law Div.1973); *State v. Rosecliff Realty Co.,* 1 *N.J.Super.* 94, 62 *A.*2d 488 (App.Div.1948). In fact, to divine legislative intent is the most fundamental of all canons of statutory construction. *Feliciano v. Oglesby,* 102 *N.J.Super.* 378, 246 *A.*2d 63 (Law.Div.1968); *Bontempo v. Carey,* 64 *N.J.Super.* 51, 165 *A.*2d 222 (Law Div. 1960). Of course, the meaning of a statute must first be sought in the language in which the act is framed. *Sheeran v. Nationwide Mutual Insurance Co., Inc.,* 80 *N.J.* 548, 404 *A.*2d 625 (1979); *Schiavo v. John F. Kennedy Hosp.,* 258 *N.J.Super.* 380, 609 *A.*2d 781 (App.Div.1992). In the case at bar, the language is silent on the question of whether the provision is to be applied to juvenile proceedings in the family court. The court is cognizant that under the well known maxim "expressio unius est exclusio alterius," it is generally held that where the Legislature makes express mention of one thing, the exclusion of others is implied. *Squires v. Atlantic County Bd. of Chosen Freeholders,* 200 *N.J.Super.* 496, 491 *A.*2d 823 (Law Div.1985); *Shapiro v. Essex County Bd. of Chosen Freeholders,* 177 *N.J.Super.* 87, 424 *A.*2d 1203 (Law Div.1980), *aff'd,* 183 *N.J.Super.* 24, 443 *A.*2d 219 (App.Div.), *aff'd,* 91 *N.J.* 430, 453 *A.*2d 158 (1982). It can be argued, therefore, that since the Legislature in this case referred to an adult provision while omitting an almost identical juvenile provision on the same subject matter, the statute should be read to apply only to proceedings in the criminal division. However, our State Supreme Court has held that the maxim that express mention of one thing implies exclusion of all others is, at best, merely an aid in determining legislative intent, not a rule of law. *Allstate Insurance Co. v. Malec,* 104 *N.J.* 1, 514 *A.*2d 832 (1986); *Gangemi v. Berry,* 25 *N.J.* 1, 134 *A.*2d 1 (1957). Therefore, great caution is necessary in its use, for blind and mechanical application can lead to improper interpretation of the statute being construed. *Id.* It is far from certain that the Legislature intentionally omitted

mention of the juvenile counterpart to *N.J.S.A.* 2C:44–6 when it formulated the language of *N.J.S.A.* 52:4B–36n. It is at least equally likely the Legislature mentioned the adult provision alone because, at the time of the enactment of this section, the legislature was remedying a perceived injustice that came to its attention in the context of victims of adult offenders. Therefore, more convincing evidence need be found before victims of juvenile offenses are to be excluded from the class of protected persons created by the statute at issue.

No such evidence can be found in the language of this piece of legislation. The court acknowledges that the legislature referred to the role of victims in the "**criminal** justice system" and the "**criminal** justice process." These terms are commonly used to describe only the system through which adults are processed. The juvenile justice system, however, though in some ways different from the adult criminal justice system, is a subdivision thereof. The same law enforcement agencies handle criminal complaints, investigations, and arrests, regardless of the age of the suspect. The same prosecutor's office represents the State, whether the defendant is being tried in the family court or the criminal division. The facilities in which juvenile delinquents are incarcerated, when necessary, are under the jurisdiction of the Department of Corrections, the same agency which administers the adult state prisons. Thus, the Legislature's use of the term "criminal justice system" does not preclude application of the provision to the juvenile justice system. Likewise, the Legislature's use of the term "crime" does not necessarily indicate exclusion of juvenile offenses. This court is aware that, in the language of the family court, a juvenile is not "convicted of a crime," but is instead "adjudicated delinquent of acts which, if committed by an adult, would constitute a crime." But, there is no question that it is the crimes defined in the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:11–1 to 2C:41–6.2, for which juveniles are tried and adjudicated delinquent. Thus, none of the language used by the Legislature in formulating any part of the Crime Victims Bill of Rights gives a clear implication that victims of juvenile offenses

were not to be afforded all the same rights and protections which were granted to all victims of crime. Therefore, it is not only proper for, but also incumbent upon, this court to seek more reliable and accurate indications of the legislative intent behind the statute at issue.

■ Preambles to statutes are often probative of the purposes behind legislative enactments. Our State Supreme Court has recognized the value of such legislative statements as tools of statutory construction. *Brewer v. Porch,* 53 *N.J.* 167, 249 *A.*2d 388 (1969); *Lane v. Holderman,* 23 *N.J.* 304, 129 *A.*2d 8 (1957). The preamble to the Crime Victims Bill of Rights, *N.J.S.A.* 52:4B–35, clearly expresses the public policy which lay behind its enactment:

> The Legislature finds and declares that without the participation of crime victims and witnesses, the criminal justice system would cease to function. The rights of these individuals should be given full recognition and protection. The Legislature has the responsibility to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process. In furtherance of this, the improved treatment of these persons should be assured through the establishment of specific rights. These rights are among the most fundamental and important in assuring public confidence in the criminal justice system.

Any court construing the terms of a statute must do so in the way which will best effectuate a clearly stated legislative policy. *Cedar Cove, Inc. v. Stanzione,* 122 *N.J.* 202, 584 *A.*2d 784 (1991). The preamble to the Crime Victims Bill of Rights is just such a clear policy statement. The focus of the legislation is on *victims,* and certain enumerated rights of which those persons are not to be deprived. In *N.J.S.A.* 52:4B–37, "victim" is defined as

> ... a person who suffers personal, physical or psychological injury or death or incurs loss of or injury to personal or real property as a result of a crime committed against that person.

Victims of juvenile offenses are well within this definition. They suffer no less from the above listed injuries simply because those inflicting the injuries upon them happen to be under the age of eighteen.

■ This court can find no principled reason to distinguish between victims of crime based on the age of the perpetrators who

commit it. The focus of the legislation being construed is on the rights of victims. There are no punitive implications to the granting of these rights. There is no danger that the rehabilitative goals which distinguish juvenile court from criminal court would be endangered by the exercise of these rights by the victims of the juveniles' offenses. In fact, it might in fact enhance the rehabilitation of some juvenile offenders to be forced to hear how their actions have effected the lives of their victims.

Furthermore, all of the interests which the Legislature sought to protect through this legislation, as clearly expressed by the preamble thereto, are implicated to the very same degree regardless of the age of the person who has done the victimization. The participation of victims is as necessary to the bringing to justice of juvenile delinquents as it is to that of adult criminals. Public confidence is as necessary to the success of the juvenile justice scheme as it is to that of the adult criminal justice system. Most of all, the need of a victim to be able to feel that he or she has played a part in the process of bringing the victimizer to justice is the very same no matter how old that victimizer may be. The Legislature has decided that these interests are among the most paramount in the operation of our system of criminal justice. The legislative goal of preserving these interests should not be thwarted by a mechanical use of ancient maxims of statutory construction, nor by a strained interpretation of certain terms which flies in the face of a clearly enunciated public policy.

For the above stated reasons, I hold the following:

1) the provision for written victims statements in predisposition reports authorized by *N.J.S.A.* 2A:4A–42c does not preclude the giving of oral statements by victims to the court before the sentencing of juveniles, and

2) the Crime Victims Bill of Rights, *N.J.S.A.* 52:4B–36, grants to every victim, regardless of whether his victimizer is an adult or a juvenile, the right to address the court before it hands down its sentence.

The State's motion for permission for the victim in the case at bar to make, prior to sentencing, an in-person statement directly to this court is **granted.**