VIOLA DOUGLAS, PLAINTIFF-APPELLANT, v. CHARLES HARRIS AND MARY JOHNSON, DEFENDANTS-RE-SPONDENTS.

Argued May 8, 1961—Decided June 30, 1961.

272

*Mr. Howard T. Rosen* argued the cause for plaintiff-appellant (*Mr. Emanuel Needle,* of counsel; *Mr. Harold Friedman,* on the brief).

*Mr. Joseph E. Zavesky* argued the cause for defendant-respondent Charles Harris (*Messrs. Mead, Gleeson, Hansen & Pantages,* attorneys; *Mr. Joseph E. Zavesky,* of counsel and on the brief).

The opinion of the court was delivered by

HANEMAN, J. Plaintiff appealed to the Appellate Division from a judgment for defendant Charles Harris entered in the Law Division. The Appellate Division affirmed the Law Division, *Douglas v. Harris,* 63 *N. J. Super.* 313 (*App. Div.* 1960). Certification was granted by this court, 34 *N. J.* 64 (1961).

On March 24, 1957 plaintiff, a pedestrian, was struck by an automobile operated by Mary Johnson. Charles Harris, a passenger at that time, was the owner thereof. Both owner and driver were uninsured. Although it does not specifically appear in the appendix, it is apparently conceded that plaintiff gave notice to the Unsatisfied Claim and Judgment Board Fund (Fund) within 90 days of the accident of her intention to make a claim against said Fund. *N. J. S. A.* 39:6–65.

On September 8, 1958 plaintiff filed a complaint in the Law Division asking recovery for the damages sustained by her as a result of said accident. Johnson was never served. Harris (hereafter referred to as defendant), although served, failed to file an answer or defend within 20 days after service upon him. It is also impliedly conceded that plaintiff gave notice to the clerk of the court for the entry of default pursuant to *R. R.* 4:56–1 and thereafter applied to the court for entry of judgment by default, having given notice of her intention to the Board to so enter judgment and file a claim thereon as required by *N. J. S. A.* 39:6–74. Pursuant to *N. J. S. A.* 39:6–66

the Board assigned an insurer for investigation and defense who in turn retained counsel for the defense of the action. The default was set aside and leave was granted to file an answer out of time. The answer admitted ownership of the vehicle which injured plaintiff but denied that it was being operated negligently or on defendant's business. By way of affirmative defense the answer asserted assumption of risk, contributory negligence and unavoidable accident. Plaintiff served interrogatories on defendant on May 8, 1959 which he failed to answer. On July 14, 1959 defendant was ordered to answer said interrogatories within 20 days of July 16, 1959. At pretrial conference on July 27, 1959 the trial judge was advised that the interrogatories remained unanswered because of the disappearance of defendant. On August 25, 1959 plaintiff moved to strike defendant's answer because of his failure to comply with the order to answer said interrogatories. The court granted the motion but allowed counsel a five-day period of grace to locate him. On October 13, 1959 defendant having failed to answer as directed, the court ordered his answer struck and rendered a "Judgment by Default" in favor of plaintiff. On December 17, 1959 plaintiff, having waived a trial by jury, proceeded to bring the matter on for proof of her damages before the trial judge. The trial judge ruled that since the case involved the Fund, which partook of the nature of a public trust, plaintiff was obliged to establish both defendant's liability and her damages, and proceeded to cross-examine plaintiff and her witnesses. After trial the court entered a judgment for defendant on the ground of plaintiff's contributory negligence.

Plaintiff argues (1) proof of liability should not be required after a judgment by default has been rendered as a sanction under R. R. 4:27-2(b)(3); (2) the court erred in finding plaintiff guilty of contributory negligence as the pleading raising that issue was stricken and the evidence in any event did not sustain that conclusion.

## I.

Although admitting some power in the trial court to require proof of liability where a final judgment by default is sought under *R. R.* 4:56, plaintiff contends that power does not exist where such a judgment is sought under *R. R.* 4:27–2(b)(3).

*R. R.* 4:56–1 provides that when a party has failed to "plead or otherwise defend" the clerk shall enter a default on the docket as to such party on the formal written request by the moving party. Thereafter, under *R. R.* 4:56–2(a), the clerk is directed to sign and enter judgment where the defendant is neither an infant nor incompetent and suit is for a sum certain or for a sum which can be computed and made certain by the clerk, upon the request of the plaintiff and upon an affidavit setting forth the details of the amount claimed.

*R. R.* 4:56–2(b), which is pertinent to the matter *sub judice,* provides:

> "In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless he is represented in the action by a guardian or guardian *ad litem* who has appeared therein. * * * If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages *or to establish the truth of any averment* by evidence or to make an investigation of any other matter, the court may conduct such hearings with or without a jury or take such proceedings as are necessary or proper. * * *" (Emphasis supplied)

■ As noted in *Reilly v. Perehinys,* 33 *N. J. Super.* 69 (*App. Div.* 1954), the practice of requiring proof of plaintiff's right to the relief demanded in the complaint, where he seeks the entry of a final judgment under *R. R.* 4:56–2(b), has not been the uniform judicial course in this State. We agree, for the reasons set forth in *Reilly,* however, that ordinarily the decision of whether to require such proof

where there appears to be some question of that right, should be left to the discretion of the judge.

It is also to be noted that the federal practice under *Federal Rule 55, 28 U. S. C. A.,* after which our *R. R.* 4:56 is patterned, permits the court in its discretion to demand proof of liability. See *Massa v. Jiffy Products Co.,* 240 *F. 2d* 702, 706 (9 *Cir.* 1957).

*R. R.* 4:27–2 provides the penalties which may be inflicted upon a party for failure to obey an order requiring him to answer questions or make other discovery antecedent to trial. Among the sanctions which may be imposed, the court is authorized by *R. R.* 4:27–2(b)(3) to make "an order striking out the pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the party who fails to obey."

There is no specific provision in our rules for the proceeding to be followed for the ascertainment of the amount for which the final judgment shall be entered after the entry of an order under the rule just cited. The recognized practice, however, has been to accord such judgment the same effect as is accorded the entry of default under *R. R.* 4:56–1 and then proceed to fix the *quantum* of damages as outlined in *R. R.* 4:56–2. *Cf. Interchemical Corp. v. Uncas Printing & Finishing Co., Inc.,* 39 *N. J. Super.* 318 (*App. Div.* 1956). No argument has been advanced by plaintiff that the provisions of *R. R.* 4:56–2 are not applicable after the order rendering a default judgment under *R. R.* 4:27, for the purpose of settling the amount of the final judgment, nor do we see how such a proposition could be successfully maintained. The applicability of *R. R.* 4:56–2 for such purpose carries with it all of the powers vested in the court incident to that rule, including the discretionary right to demand proof of liability. We observe, parenthetically, that the trial court, in exercising its discretion where the judgment by default is ordered pursuant to *R. R.* 4:27–2(b)(3), should consider whether the refusal of a party to make the

discovery was flagrant and contumacious and whether the undisclosed information demanded might go to the proof of plaintiff's case.

Nor does *R. R.* 4:56–5, which reads: "The provisions of Rule 4:56 do not apply where the court orders a party in default for failure to appear, participate in, or prepare for the pretrial or trial of a case," mitigate against this conclusion. To read this rule literally, as plaintiff suggests, to mean that *R. R.* 4:56–2(b) is effective only where a default judgment results from a failure to plead, and is inapplicable *in toto* where default is occasioned by any other means, would result in an absurdity. If it were so inoperative, there would be no manner provided for the entry of a final judgment where the rendering of a default judgment, as here, occurred as an imposition of a sanction under *R. R.* 4:27. This interpretation would leave a plaintiff with an empty victory. Rules like statutes are intended to be read sensibly rather than literally. *Schierstead v. City of Brigantine,* 29 *N. J.* 220 (1959). They should not be construed so as to result in an absurdity. *Cf. Elizabeth Federal Savings & Loan Assoc. v. Howell,* 24 *N. J.* 488, 508 (1957), *In re Merrill,* 88 *N. J. Eq.* 261, 273 (*Prerog.* 1917), *State v. Clark,* 29 *N. J. L.* 96 (*Sup. Ct.* 1860). The intent of *R. R.* 4:56–5 is to accord to a judgment by default the effect of an entry of default, and to deny to the party against whom such judgment has been rendered as a sanction the advantage of that portion of *R. R.* 4:56 which was adopted for his benefit, *i. e.,* the requirement of three days notice to a party who has appeared, of the application for final judgment. See *Durling Farms v. Murphy,* 39 *N. J. Super.* 387, 391 (*App. Div.* 1956).

So if this were a case not involving the Fund the trial judge had the discretionary power under *R. R.* 4:56 to require plaintiff to prove the liability of defendant and to cross-examine plaintiff's witnesses produced for that purpose.

Plaintiff further contends that as a matter of public policy the burden of the risk of a defendant's failure to

cooperate should be borne by the Fund and that such policy supervenes any power the court may have under the Rules.

There is no logical basis upon which such an asserted public policy can stand, and in fact public policy leans quite the other way. The purpose of the Fund is to provide a measure of relief to persons who sustain losses or injury inflicted by financially irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless. *Corrigan v. Gassert,* 27 *N. J.* 227 (1958), *Dixon v. Gassert,* 26 *N. J.* 1 (1958). The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy. *Giles v. Gassert,* 23 *N. J.* 22, 34 (1956). The Fund is created for those purposes by charging fees to registrants of uninsured motor vehicles and by levying assessments against liability insurance companies doing business in New Jersey and is regarded as a trust fund for the stated purposes and the cost of administration. *Wormack v. Howard,* 33 *N. J.* 139, 143 (1960). The public interest demands that the Fund, although a trust fund for those individuals injured by financially irresponsible or unidentified operators of motor vehicles, be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom. This is a duty imposed by public policy and owed to the contributors as well as the general public. See *Myers v. Cave,* 55 *N. J. Super.* 185 (*App. Div.* 1959).

*N. J. S. A.* 39:6–74 and 75 and *N. J. S. A.* 39:6–78 are especially illuminative on the question of the legislative policy.

*N. J. S. A.* 39:6–74 provides, in part:

"No claim shall be allowed and ordered to be paid out of the fund if the court shall find, upon the hearing for the allowance of the claim, that it is founded upon a *judgment which was entered by default* unless * * * (2) *prior to the entry of such judgment the board shall have been given notice* of intention to enter

the judgment and file a claim therein against the fund and shall have been afforded an opportunity to take such action as it shall deem advisable under section 15 [*N. J. S. A.* 39:6–75].

If the court, upon a hearing for the allowance of any claim against the fund, finds * * * that the action upon such claim was not fully and fairly defended, * * * the court shall allow such claim but shall order it to be paid only in such sum as the court shall determine to be *justly due and payable out of the fund*, on the basis of the actual amount of damages *for which the defendant was liable* to the plaintiff * * *." (Emphasis supplied)

## *N. J. S. A.* 39:6–75 provides, in part:

"When the board receives notice, as provided in section fourteen [*N. J. S. A.* 39:6–74], the insurer to which such action has been assigned may through counsel *enter an appearance*, file an answer, appear at the trial, *defend the action or take such other action as it may deem appropriate* on the behalf and in the name of the defendant, and take recourse to any appropriate method of review on behalf of, and in the name of, the defendant." (Emphasis supplied)

■■■ The notice of the intention to enter a final judgment by default required to be given by *N. J. S. A.* 39:6–74 is for the purpose, as exhibited by *N. J. S. A.* 36:6–75, of permitting the Fund, through counsel of the insurer to whom the action has been assigned, to participate in those proceedings in order to assure that only where the liability of defendant has been established shall a claim against the Fund be allowed and then only to the extent of plaintiff's actual damages. Such an intent is exhibited by the above italicized portions of the statute which constitute an express direction that plaintiff establish defendant's liability prior to entry of final judgment on default.

■■■ The second paragraph of *N. J. S. A.* 39:6–74 above quoted envisions a possible inquiry into the liability of the defendant even after final judgment has been entered. This is highlighted by the above italicized phrases and particularly the direction that the court shall allow such claim only for damages "for which the defendant was liable."

 *N. J. S. A.* 39:6–78 provides, in part, when suit is brought against the Director of the Division of Motor Vehicles in "hit and run" cases, that:

"* * * no judgment * * * shall be entered * * * unless the court is satisfied, upon the hearing of the action, that—* * *
(d) The claimant has a cause of action against the operator or owner of such motor vehicle or against the operator who was operating the motor vehicle without the consent of the owner of the motor vehicle."

Although the factual situation here present does not fall within the terms of the second paragraph of *N. J. S. A.* 39:6–74 or of *N. J. S. A.* 39:6–78, all of the sections of the statute stand *in pari materia* and must be considered together in a construction involving the ascertainment of the policy of the enactment. The above quoted portions of the act clearly demonstrate the legislative intent to allow claims against the Fund only where liability of the person allegedly causing the loss or injury has been established. And this is true whether the liability be established by a plenary trial against the tortfeasor or where final judgment is sought by default or obtained by consent or where action is brought against the Director in "hit and run" cases.

## II.

Plaintiff also argues that the defense of contributory negligence was waived and not an issue before the court. She rationalizes that since a failure to affirmatively plead contributory negligence, *R. R.* 4:8–3, results in a waiver of that defense, *R. R.* 4:12–8, the same effect must be accorded the striking of such a plea.

 Plaintiff is correct in her conclusion that the rule requiring a defendant to so affirmatively plead is mandatory. However, the court may relax that rule when its enforcement would be inconsistent with substantial justice. See *Edwards v. Wyckoff Electrical Supply Co.,* 42 *N. J. Super.* 236 (*App. Div.* 1956); *Colegrove v. Behrle,* 63 *N. J. Super.* 356 (*App.*

*Div.* 1960). In the light of the public policy to permit payment by the Fund only of claims where the defendant's liability is established, the rule should be relaxed. The court did not err in considering whether plaintiff was guilty of contributory negligence.

In connection with plaintiff's argument that the evidence did not sustain the court's finding that she was guilty of contributory negligence, it is necessary to examine the testimony. Plaintiff and the occupants of the automobile which was involved in the accident were the only eyewitnesses. Plaintiff testified that on March 24, 1957, at between 1:00 and 2:00 A. M., she was crossing Belmont Avenue between Avon and Grove Streets, Newark. Before undertaking the crossing she made an observation and did not see any cars or approaching headlights. She again made an observation in both directions when she arrived at the middle of Belmont Avenue. When she had practically reached the other side of the street she was suddenly struck by defendant's automobile. She was not certain whether the headlights of the automobile were on directly before the accident. One Clifford Ervin, testifying on plaintiff's behalf, stated that he had preceded plaintiff crossing the street to his home at 283 Belmont Avenue. He was on his stoop with his back to the street at the time of the accident. Prior to the accident he saw no lights and heard no horns. Upon hearing the impact, he turned around and walked to the car. At that time he observed that the headlights were illuminated. Based upon this testimony, the trial court found as follows: "The headlights on the defendant's car were lit and that the plaintiff did not make proper observations before crossing the street, at a point other than a crosswalk, and failed to yield the right of way to defendant's vehicle in accordance with *N. J. S.* 39:4–34."

It must be remembered that plaintiff's interrogatories sought to elicit the details of the accident from the defendant, including information concerning who was operating the motor vehicle, at what speed the motor vehicle was being

operated, whether defendant or the operator of the motor vehicle had consumed any alcoholic beverages within eight hours prior to the accident, when the brakes were first applied immediately prior to the accident, and whether the lights were on immediately prior to the accident. Defendant's disappearance and consequent failure to answer these interrogatories seriously hampered plaintiff in the preparation and trial of her case.

The court should have indulged the inference that the information sought by plaintiff which was in defendant's sole possession and which related to the identity and conduct of the driver of the motor vehicle and the manner of operation thereof would be beneficial to plaintiff. *Interchemical Corp. v. Uncas Printing & Finishing Co., Inc., supra.*

In *Stoelting v. Hauck*, 32 *N. J.* 87, at *p.* 101 (1960), the court said:

"Contributory negligence is conduct on the part of the plaintiff that involves an unreasonable risk of harm to him and contributes as a legal cause to his injury. But in order to bar recovery, the unreasonableness of the plaintiff's conduct must have been in its tendency to expose him to the particular risk from which his injury resulted."

An analysis of the testimony does not lead to the conclusion that plaintiff's conduct exposed her to the particular risk from which her injury resulted. She was not guilty of contributory negligence.

Reversed and remanded for further proceedings for the establishment of plaintiff's damages.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.