99 N.J. Super. 146 (1968)
238 A.2d 718
SAMUEL SELIMO, PLAINTIFF,
v.
OTIS HARTSHORN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 1, 1968.
*149 Mr. Daniel E. Isles for plaintiff (Messrs. Querques & Isles, attorneys).
Mr. Joseph P. Dallanegra, Jr. for defendant (Messrs. Dallanegra & Dallanegra, attorneys).
LARNER, J.S.C.
The issue involved herein arises upon plaintiff's application for payment of a judgment by the Unsatisfied Claim and Judgment Fund Board (Fund) which he obtained against defendant after a contested jury trial. The case was tried before this court and resulted in a verdict of $4,100 for personal injuries and $1,600 for property damage. The judgment for property damage is not involved in the present proceeding since the existence of collision insurance coverage prevents recovery against the Fund. The court is therefore concerned solely with the judgment of $4,100 for personal injuries. Counsel have stipulated that the court may consider not only the affidavit submitted in support of the motion and the testimony of the defendant on supplementary proceedings, but also all the facts established at the trial itself.
The court finds that plaintiff has complied with all the requirements of N.J.S.A. 39:6-70. The sole remaining issue in dispute therefore, is whether plaintiff has complied *150 with N.J.S.A. 39:6-71(b)(1), which provides that an order for payment shall be made if the court is satisfied:
"That the applicant has fully pursued and exhausted all remedies available to him for recovering damages against all persons mentioned in subparagraph (m) of section 10 by
(1) Commencing action against all such persons against whom the applicant might reasonably be considered as having a cause of action in respect of such damages and prosecuting every such action in good faith to judgment * * *."
In testing whether plaintiff has carried out his obligation to pursue and exhaust available remedies against other tortfeasors against whom he "might reasonably be considered as having a cause of action", it is necessary to delve into the unusual facts surrounding the occurrance of the accident.
On November 21, 1964, around midnight, plaintiff was operating his vehicle in a westerly direction on Route 46, in Parsippany-Troy Hills, New Jersey. Defendant was proceeding in an easterly direction on Route 46, crossing the intersection of Beverwyck Road, when he lost control, jumped the median barrier and collided with plaintiff in the westbound lane.
By way of explanation for his actions defendant testified that as he approached the intersection he was suddenly confronted by a car without lights, being pushed across the eastbound lanes by two boys. He swerved his car to the right and managed to avoid the obstructing vehicle. However, in attempting to turn back to the fast lane, his car hit the concrete divider, was hurled to the wrong side of the road and collided with plaintiff's vehicle. He did not see the vehicle prior to impact, and in fact did not see or speak to plaintiff at the scene or any time thereafter.
Plaintiff did not see defendant's vehicle until it was facing him in his lane, and had no knowledge of the presence of the stalled vehicle which was allegedly being pushed across the eastbound lanes. In fact, he was rendered unconscious at the time of the collision, regaining consciousness when he reached the hospital.
*151 Police Officer Moore received a radio call regarding the accident as he was proceeding east on Route 46. As he approached Beverwyck Road after the collision had occurred, he saw a car being pushed across the eastbound lanes and the two vehicles of the litigants in the westbound lanes. He spoke to defendant and obtained his version of the accident. He also spoke to the individuals pushing the stalled vehicle and obtained their names and addresses.
Although he testified at the trial as to the names and addresses of the owner of the stalled vehicle and the persons who pushed the car across the road, his official report on file with the Police Department of the Township of Parsippany-Troy Hills was strangely silent on this information. His diagram on the report referred to the location of a "stalled auto", and the only other reference to such a vehicle was in the summary of the version of the accident submitted by defendant as follows:
"I was travelling east on Route 46 when I saw a vehicle diagonal on the road in front of me. I applied my brakes and swerved to the left to avoid hitting the car. My car jumped the center isle and hit a car going west."
Furthermore, there were no witnesses listed on the report.
The police officer's recollection of the identity of the persons associated with the stalled car was refreshed at trial by some personal notes on small pieces of paper which had been retained by him since the accident. No explanation was submitted for the omission of this vital information from the official police report.
It is conceded, however, that neither plaintiff nor defendant nor their attorneys had any knowledge of the identity of the owner or operator of the third vehicle before the day the police officer appeared in court pursuant to subpoena, and that none of them had any prior knowledge of the existence of any police writings or notes concerning the accident other than the official police report.
*152 It is admitted that plaintiff and his attorney did not interview the police officer prior to trial and did not conduct any investigation of the allegations as to the stalled car. Apparently, they relied upon the absence of identification in the police report. It is significant that defendant, his attorney and the investigative agency of the Fund placed similar reliance on the police report and made no effort to identify the persons connected with the stalled car which was alluded to by the defendant.
During the discovery process prior to trial, interrogatories were addressed to defendant and were answered in the following manner:
"2. Set forth the names and addresses of all eye witnesses to the accident.
ANS.: Plaintiff and defendant and all persons mentioned in all parties' answers to interrogatories and the two boys and a girl that were with the car being pushed.
3. Set forth the names and addresses of all persons having knowledge of relevant facts pertaining to the accident.
ANS.: Parties to all the action; all persons mentioned in all parties' answers to interrogatories; all persons who may be discovered from a continuing investigation; Parsippany-Troy Hills Police Report and all persons mentioned therein; Ptlm. James Moore, Badge No. 18; Rockaway Neck Ambulance Squad; St. Claire's Hospital Report and all doctors, nurses and interns mentioned therein; Zita's or Ziza's Sunoco Station; two boys pushing disabled vehicle whose names are unknown at this time and the girl with them. All doctors who may examine plaintiff on behalf of the defendant."
There were no amendments to these answers prior to trial.
The dilemma which faces plaintiff is that even if he had a potential cause of action against the persons engaged in pushing the stalled car just prior to the collision, it was barred by the statute of limitations as of November 21, 1966, long before the identity of the alleged joint tortfeasors was revealed.
Thus, the issues to be resolved are: (1) whether plaintiff should be compelled to proceed with suit against the joint tortfeasors in view of the expiration of the limitation period, *153 and (2) whether the failure to prosecute that action within said period constitutes a bar to recovery from the Fund.
In determining whether plaintiff has exhausted all remedies available to him, the court is not called upon to determine as an ultimate fact whether the individuals associated with the stalled vehicle were negligent and whether that negligence was a proximate cause of the collision and plaintiff's injuries and damages. Ultimate success or failure in that litigation is of no moment on this application, since the Legislature clearly intended that plaintiff undertake the imperative duty of exhausting his remedy by prosecuting such action in good faith to judgment. See Wormack v. Howard, 33 N.J. 139 (1960).
It is manifest that if plaintiff reasonably had a cause of action against another tortfeasor in a prima facie sense, he did not comply with the prerequisite demanding exhaustion of available remedies. It is equally manifest from the evidence at the trial that such a potential cause of action did exist on a prima facie basis against those pushing the stalled vehicle.
Thus, in the absence of the complication of the bar of the statute of limitations, the order for payment would have to be denied until plaintiff would proceed against these parties to test liability by prosecution of the claim to final judgment.
Plaintiff asserts, however, that the institution of suit against these alleged tortfeasors at this time would be a vain gesture because of the complete bar of the statute of limitations; and that the court should not require him to pursue a theoretical remedy which cannot as a matter of law be translated into a real remedy.
The Fund contends that the circumstances of this case equitably estop the potential defendants from asserting the defense of the statute of limitations, relying upon Noel v. Teffeau, 116 N.J. Eq. 446 (Ch. 1934), and that plaintiff's remedy is therefore not barred as a matter of law.
*154 In Noel v. Teffeau, the former Court of Chancery enjoined a defendant from pleading the statute of limitations in an automobile negligence action on equitable grounds. Defendant Teffeau had been operating his vehicle and struck plaintiff, a pedestrian. He did not stop his car despite the entreaties of his wife, insisting that he had not hit the man. Apparently he also directed his wife and daughter not to say anything about the occurrence to anyone. Nevertheless, he reported the incident to his insurance carrier, and representatives of the insurance company conferred with plaintiff at the hospital and secured his admission that he could not describe the car which hit him and had no information as to its identity or the identity of the driver. They did not tell the claimant their names, the name of the insurance company, or the name of their assured.
Throughout the two-year period of the statute of limitations plaintiff remained ignorant of the identity of the driver of the vehicle. Thereafter, a diligent attorney, with the aid of an unusual chain of circumstances, discovered the true facts and started suit for plaintiff's injuries.
The court held that Teffeau's acts or omissions involved a breach of a legal duty to plaintiff imposed by the Motor Vehicle Act and that it would be unconscionable to permit him to escape liability by way of the statute of limitations. Since the Motor Vehicle Act at that time required that any person knowingly involved in an accident shall stop and give his name, address and operator's license to the injured person or to any officer or witness, defendant's violation of that obligation constituted such bad faith as to estop him on equitable principles from taking advantage of his own fraud. See also Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 109 (1965).
On the basis of the precedent of Noel v. Teffeau the Fund argues that the current Motor Vehicle Act requires that a person involved in an accident shall give his name, address and license to the person injured or struck and to any police officer or witness, N.J.S.A. 39:4-129, and that since the *155 alleged tortfeasors only gave the information to the police officer, they would be enjoined from pleading the bar of the statute of limitations.
In my opinion the equitable principles of Noel v. Teffeau, are not applicable to the facts and circumstances of this case. It is clear that the third parties gave the requisite information to the police officer, as required by the statute. Plaintiff, who was alone at the time, was unconscious and taken to the hospital by ambulance. The vehicle of the alleged tortfeasors did not come in contact with plaintiff's vehicle or even with defendant's vehicle. Can it be said that these third parties were "knowingly involved" in the accident resulting in plaintiff's injuries? Can it be said that they acted fraudulently or unconscionably toward plaintiff, in view of the fact that they did carry out their duty by making a full revelation to the police officer?
The mere technical failure to seek out plaintiff himself at some future time does not constitute such unconscionable conduct as to deprive them of the defense of the statute of limitations. Whether there was a technical violation of N.J.S.A. 39:4-129 in a prosecution under the statute is not of the essence on this equitable issue. Cf. State v. Gill, 89 N.J. Super. 104 (App. Div. 1965), affirmed 47 N.J. 441 (1966). The court must look to the practicalities of the situation on the night of the accident, and to the purpose and spirit of the law. For all practical purposes, the individuals who were pushing a stalled vehicle and had no direct involvement with either of the cars that collided on the other side of the road, performed their moral and legal duty when they identified themselves to the police officer investigating the accident. Their good faith and total absence of willful concealment eliminates the equitable basis for removing the bar of the statute of limitations.
It is, therefore, apparent that the institution of suit against the alleged tortfeasors at the present time would be fruitless. The court should not require the pursuit of a *156 claim which is insupportable on legal grounds. Nash v. Iamurri, 76 N.J. Super. 167 (Law Div. 1962); Austin v. Unsatisfied Claim and Judgment Fund Board, 234 Md. 89, 198 A.2d 82, 7 A.L.R.3d 845 (Ct. App. Md. 1964). Because of the limitations bar, I find that as of the present time or, more accurately, as of the time of the application for payment from the Fund, plaintiff did not have a claim against any other person under the standard of reasonableness which is the touchstone of determination under N.J.S.A. 39:6-71. The court should not compel plaintiff to engage in litigation which is merely a will-o'-the-wisp as a condition precedent to a determination of the substantive problem in the case.
The remaining pivotal issue, therefore, is whether the failure of plaintiff and his attorney to discover the identity of the persons involved with the stalled vehicle and to prosecute a claim against them prior to the expiration of the period of limitations constitutes a complete bar to recovery from the Fund.
The Fund does not question the good faith of plaintiff or his attorney with respect to the failure to prosecute the claim against the third parties within time, but asserts that the claimant failed to demonstrate that due diligence and reasonable efforts were made to exhaust this remedy.
N.J.S.A. 39:6-71 does not undertake to define the nature of the efforts which must be undertaken by a claimant to exhaust all available remedies in order to recover from the Fund. Nevertheless, it is manifest from the purpose of the legislation that a claimant must exert "all reasonable efforts" in the process of exhausting his available remedies, in order to qualify for payment. This is the test applied to "hit and run" cases under N.J.S.A. 39:6-78, which requires claimants to make all reasonable efforts to ascertain the identity of the motor vehicle, its owner and operator. Nash v. Iamurri, supra, 76 N.J. Super., at p. 175; Serkes v. Parsekian, 73 N.J. Super. 344, 347 (Law Div. 1962). Since all sections of the act stand in pari materia and must *157 be considered in arriving at a construction consistent with the legislative policy, this is the test which should be applied in the construction of N.J.S.A. 39:6-71(b). Douglas v. Harris, 35 N.J. 270, 281 (1961); Gilbert v. Unsatisfied Claim and Judgment Fund Board, 85 N.J. Super. 143, 148 (App. Div. 1964), certification denied 44 N.J. 403 (1965).
The requirement of reasonable efforts was applied in other terms in Wormack v. Howard, 33 N.J. 139 (1960) where the court construed the efforts necessary to comply with N.J.S.A. 39:6-70(f). In that case the court compelled the claimant to proceed with suit against an insurance company in order to establish coverage or noncoverage so that he could make a showing of the absence of insurance as a basis for payment. The submission of a mere affidavit of the insurance company executive setting forth the reasons for disclaimer was held to constitute such a deficient investigation of the issue as to preclude an order for payment from the Fund. The test of that case, involving deficiency in investigation under N.J.S.A. 39:6-70(f), may be equated with the test of "reasonable efforts" under the "hit and run" section of the statute. In essence, therefore, under N.J.S.A. 39:6-71(b) the question is whether the claimant and his attorney exhausted available remedies through the exercise of reasonable diligence and reasonable efforts.
In answering this question the court must, of course, be guided by the underlying purpose of the legislation and the remedy sought to be accomplished. "The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy." Giles v. Gassert, 23 N.J. 22, 34 (1956). "The purpose of the Fund is to provide a measure of relief to persons who sustain losses or injury inflicted by financially irresponsible or unidentified operators of motor vehicles where such persons would otherwise be remediless." Douglas v. Harris, 35 N.J. 270, 279 (1961); Corrigan v. Gassert, *158 27 N.J. 227 (1958); Dixon v. Gassert, 26 N.J. 1 (1958). The claimant should be permitted to recover from the Fund if he qualifies and is a member of the class to be benefited thereby; and whether he is should be determined on a reasonably liberal basis, applying rules of practicality rather than technicality. Compliance with the burden of proving eligibility under the statute should be scrutinized with an eye toward the practicalities of the situation facing the claimant and his attorney. There can be no exact criterion of that which constitutes reasonable efforts or diligence. Each case must be judged by its particular circumstances, and by the practicalities involved. Serkes v. Parsekian, supra, 73 N.J. Super., at pp. 344, 347.
Plaintiff in this case had no direct knowledge of the involvement of a third vehicle. This information came to him or his attorney in an oblique way through the allegation of defendant in his reported version of the accident contained in the police report, and subsequently in defendant's answers to interrogatories. In neither of these documents were the names of the alleged joint tortfeasors mentioned, and, in fact, defendant was as ignorant of their identity as plaintiff.
The Fund contends that plaintiff's reliance upon the police report and upon defendant's answers to interrogatories was unwarranted, and that he should have undertaken additional avenues of investigation to identify the individuals involved. For example, it is asserted that if plaintiff's attorney had personally interviewed the police officer or had taken his deposition, he probably would have discovered the requisite information.
Hindsight reflects that such further investigational activity might have revealed the identity of the individuals and might have avoided plaintiff's present dilemma. But would a reasonably prudent attorney have gone that far when faced with the facts which existed in this cause at the relevant period of time?
*159 What might have been reasonable if plaintiff did not have an identified tortfeasor and was compelled to proceed under the "hit and run" provision of the statute is quite different from what was reasonable in identifying an unknown third party whose existence was asserted by defendant in an effort to avoid liability for patent negligence on his part.
Under the "hit and run" provision plaintiff has no basis for recovery from the Fund unless he is able to establish an inability to identify the culprit. He recognizes this immediately as his primary burden for recovery. His efforts, therefore, must be concentrated upon this initial mission through every available clue in order to make out a prima facie case of liability. It might, therefore, be argued that if this were a "hit and run" claim, the indirect clue in the police report would have required further inquiry of the police officer to conform to the test of reasonable efforts.
However, in the context of this case plaintiff had an identified tortfeasor who actively caused the collision. The police report failed to reveal the names of any other individuals who might be involved, and plaintiff's attorney could have reasonably concluded that the reference to the stalled vehicle was a not uncommon smoke screen raised by defendant to excuse blatant negligence on his part.
In any event, during the discovery process of the litigation plaintiff sought data through interrogatories in support of the contentions made by defendant. And defendant who asserted the existence of other tortfeasors, failed to identify them either as participants or as witnesses. It is apparent to the court that plaintiff's attorney, faced with the police report and the answers to interrogatories, acted as any reasonably prudent member of the bar by proceeding to trial in reliance thereon. Perfection was not required, only reasonableness.
Since it was defendant who created the issue involving third parties, normal expectation would have dictated that if such persons existed he would undertake the investigation necessary to solidify his defense.
*160 Instead, defendant blandly asserted that the pushing of a stalled vehicle caused him to swerve to the wrong side of the road and to collide with plaintiff's vehicle  yet he never bothered to seek out or identify the persons so intimately involved in his defense. Defendant's attorney undoubtedly proceeded in this manner because of his reliance upon the police report. Nevertheless, he now contends on behalf of the Fund that similar reliance by plaintiff's attorney constitutes such culpable neglect as to bar plaintiff from a payment which is otherwise justly due to him.
It is evident, of course, that inaction by defendant and his attorney does not relieve plaintiff from the statutory burden of proving exhaustion of remedies through the use of reasonable efforts. It does, however, illustrate that plaintiff's attorney did exercise reasonable diligence under the peculiar circumstances involved.
The Fund cites cases decided under the "hit and run" statute of the Province of Ontario, Canada, which was the model for the New Jersey legislation. Ont. Rev. Stat. 1950, c. 167; Szczesny v. Vasquez, 71 N.J. Super. 347, 358 (App. Div. 1962). In these cases, the courts consistently hold that the claimant must establish reasonable efforts on his part to identify the tortfeasor as a condition precedent to payment from the Fund. Each case presents a factual complex from which the court was called upon to determine whether such reasonable efforts were made; and in several of them recovery was denied because of a factual finding of inadequacy in the investigative efforts to identify the culprit. See Stewart v. Registrar, [1949] Ont. W.N. 226; McDonald v. Registrar, [1952] Ont. W.N. 598; Murray v. Attorney General, [1964] 49 W.W.R. 253 (B.C.); Weisler v. Doman, [1952] Ont. W.N. 632. On the other hand, other Canadian courts have directed payment where the facts demonstrated that reasonable efforts were made. Scott v. Attorney General, 35 D.L.R.2d 41 (B.C. 1962); Edmonds v. Supervisor, 5 D.L.R.2d 704 (Alberta 1956). None of these Canadian cases is persuasive because of the distinguishing *161 facts involved. For an extensive annotation dealing with the general problem see 7 A.L.R.3d 851, 863-67.
The unusual and fortuitous circumstance that the police officer in this instance deviated from the norm and kept the information as to the identity of the third persons in his private papers without transference to the official record, should not deprive plaintiff of an otherwise valid claim. This would result in an injustice contrary to the policy inherent in the creation of the Unsatisfied Claim and Judgment Fund  an injustice resulting not from the neglect of plaintiff but from the neglect of a police officer. Ordinary care would have required no more than what plaintiff did, i.e., to rely upon the normal reliability of police reports as to the identity of all persons involved in an accident. Such reliance was adequate and reasonable under the existing circumstances. Silva v. Motor Vehicle Accident Indemnification Corp., 31 Misc.2d 933, 221 N.Y.S.2d 777 (Sup. Ct. 1961); Application of Shindler, 41 Misc.2d 590, 245 N.Y.S.2d 90 (Sup. Ct. 1963).
It is, therefore, the finding of this court that plaintiff did use all reasonable diligence and efforts, though unsuccessful, to identify third persons as potential tortfeasors within the period of the statute of limitations, and that he exhausted all remedies available to him within the requirements of N.J.S.A. 39:6-71(b). An order will be granted directing the Treasurer to make payment to the plaintiff from the Unsatisfied Claim and Judgment Fund.