102 N.J. Super. 378 (1968)
246 A.2d 63
PETRA FELICIANO, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CARMEN RIVERA, DECEASED; ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF ANGEL RIVERA, DECEASED; ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF EDWIN RIVERA, DECEASED; KENNETH RIVERA, AN INFANT, BY HIS GUARDIAN AD LITEM, PETRA FELICIANO; AND GILBERT RIVERA, AN INFANT, BY HIS GUARDIAN AD LITEM, PETRA FELICIANO, PLAINTIFFS,
v.
JOHNNY OGLESBY, ADMINISTRATOR AD LITEM OF THE ESTATE OF GEORGE WASHINGTON, DECEASED, DEFENDANT. LUDELL BRADFORD, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JAMES BRADFORD, JR., DECEASED, PLAINTIFF,
v.
JOHNNY OGLESBY, ADMINISTRATOR AD LITEM OF THE ESTATE OF GEORGE WASHINGTON, DECEASED, DEFENDANT. ELIZABETH BUSH, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF FREDDIE BUSH, JR., DECEASED; AND ROBERT L. SIMMONS, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF MANNIE SIMMONS, JR., DECEASED, PLAINTIFFS,
v.
JOHNNY OGLESBY, ADMINISTRATOR AD LITEM OF THE ESTATE OF GEORGE WASHINGTON, DECEASED, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 23, 1968.
*381 Mr. Solomon Lubow for plaintiff Petra Feliciano, administratrix ad prosequendum, etc., and others (Messrs. Chazin & Chazin, attorneys).
Mr. Nathan D. Weiss for plaintiff Ludell Bradford, administratrix ad prosequendum, etc. (Messrs. Weiss and Feiner, attorneys); and for plaintiffs Elizabeth Bush, administratrix ad prosequendum, etc., and Robert L. Simmons, administrator ad prosequendum, etc. (Mr. Harry Eisenberg, attorney).
Mr. Daniel Kaplinsky for the Unsatisfied Claim and Judgment Fund (Messrs. Vogel and Kaplinsky, attorneys).
*382 SEIDMAN, J.C.C. (temporarily assigned).
These proceedings, before the court on the applications of judgment creditors, pursuant to N.J.S.A. 39:6-69, for payment by the Unsatisfied Claim and Judgment Fund, present a problem which does not appear to have been determined previously in any reported decision in this State.
The basic issue is whether a nonresident claimant who has obtained judgments against an uninsured tortfeasor is entitled to payment by the Fund, where moneys have been or will be received by reason of uninsured motorist coverage in an automobile policy issued in New York, the insurer having the right to reimbursement from the proceeds of any settlement with or judgment against the uninsured tortfeasor.
On March 20, 1965 Angel Rivera, a resident of New York, was driving a station wagon in a general westerly direction along Route 22 in the Newark area. He was accompanied by his wife Carmen; three of their infant children, Edwin, Kenneth and Gilbert, and two friends, Carmen Romeu and Adela Gorgas. Proceeding east was another automobile, operated by one George Washington, in which James Bradford, Jr., Freddie Bush, Jr., and Mannie Simmons, Jr. were riding as passengers, all residents of New Jersey. Suddenly and unaccountably the Washington car swerved from the eastbound lane into the path of the Rivera car. In the ensuing collision all the occupants of the Washington car and Mrs. Rivera were killed instantly. Angel Rivera died after three days. His son Edwin suffered a severe head wound and remained in a coma until his death 2 1/2 years later. The injuries sustained by the other occupants of the Rivera car were relatively minor.
Subsequently, Petra Feliciano instituted suit as administratrix ad prosequendum of the estates of Angel Rivera, Carmen Rivera and Edwin Rivera; as general administratrix of the estates of Angel Rivera and Edwin Rivera, and as guardian ad litem of Kenneth and Gilbert Rivera. She joined as parties defendant Johnny Oglesby, administrator ad litem *383 of the estate of George Washington; Alice Farrell, and John T. Vitolo. Mrs. Farrell and Vitolo were operators of automobiles to the rear of the Rivera car which had become entangled in the collision. Complaints against these defendants, and also against Petra Feliciano as personal representative of the estate of Angel Rivera, were filed by Ludell Bradford, administratrix ad prosequendum of the estate of James Bradford, Jr.; Elizabeth Bush, administratrix ad prosequendum of the estate of Freddie Bush, Jr., and Robert L. Simmons, administrator ad prosequendum of the estate of Mannie Simmons, Jr. The claims of Carmen Romeu and Adela Gorgas are not involved herein.
At a trial of the consolidated cases, limited to the issue of liability, the jury found, in response to interrogatories, that the negligence of George Washington was the sole proximate cause of the collision. Thereafter, by consent of counsel, the court tried the damage phase of the cases without a jury. Judgments were entered in favor of Petra Feliciano, in her several representative capacities, totalling $142,303. Awards were also made in the respective sums of $70,745 for the death of James Bradford, Jr.; $15,804 for the death of Freddie Bush, Jr., and $11,635 for the death of Mannie Simmons, Jr. All the judgment creditors now seek payment by the Fund in such proportions as the court may determine. The insolvency of the Washington estate is conceded.
Although the Fund interposes a pro forma objection to the Bradford, Bush and Simmons applications, no supporting facts have been submitted. The court is satisfied that these judgment creditors are entitled to their pro-rated shares, subject to the maximum limits prescribed by N.J.S.A. 39:6-69(a) and (b).
The Fund also resists the Feliciano application, contending that the members of the Rivera family are not qualified persons as defined in N.J.S.A. 39:6-62 and, in addition, that they are ineligible to receive payment because of the existence of insurance coverage. The other applicants, whose *384 shares obviously would be diminished if the Feliciano judgments were to participate in the distribution, join in opposing the application.
At the time of the tragic accident the Rivera car was insured under a policy issued by Public Service Mutual Insurance Company, which provided for protection against uninsured motorists. The limits of coverage for an accident were $10,000 for one person killed or injured, and $20,000 for more than one. The insuring agreement (termed Coverage J) was
"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration." (Emphasis supplied)
"Insured," as defined in the policy includes "the named insured and any relative" and "any other person while occupying an insured vehicle."

I
The Fund argues that, by virtue of the uninsured motorists coverage, New York does not afford New Jersey residents recourse of a substantially similar chraacter to that provided by the New Jersey Fund law; consequently, Mrs. Feliciano, in her representative capacity, is not a qualified person within the meaning of our statute. See Betz v. Director of Division of Motor Vehicles, 27 N.J. 324 (1958). There is no merit to the contention.
The term "qualified person," under N.J.S.A. 39:6-62, includes a resident of another state in which "recourse is *385 afforded, to residents of this State, of substantially similar character to that provided for by this act." In 1958, by enactment of the Motor Vehicle Accident Indemnification Corporation Law, L. 1958, c. 759, 27 McKinney's Consol. Laws, "Insurance Law," c. 28, § 600 et seq., New York created an unsatisfied claim and judgment fund comparable to ours, deemed by the Attorney General of this State to provide recourse of substantially like character. See Rudnick v. Bentler, 66 N.J. Super. 224, 229 (App. Div. 1961).
The point is made that if a New Jersey resident holding a policy containing such coverage were killed or injured in New York by the negligence of an uninsured motorist of that state, the New Jersey resident would not be a qualified person within the meaning of the New York statute. Even if that were so, it does not necessarily follow that reciprocity of remedy is affected thereby.
The New York plan combines the features of compulsory uninsured motorists coverage and those of a fund for the payment of unsatisfied claims and judgments. Claims are divided into two classes, one consisting of "insured persons" and the other of those not protected by insurance but within the definition of "qualified person."
Section 601(b)(1) of the New York statute declares a resident, other than an insured, to be qualified to prosecute a claim against the Motor Vehicle Accident Indemnification Corporation. An "insured" is defined as a person covered by a policy of insurance containing the provisions required by the statute, including uninsured motorists coverage. Application of Culver, 33 Misc.2d 346, 225 N.Y.S.2d 666 (Sup. Ct. 1962). Such person cannot seek compensation from the corporation. His remedy is contained in his policy. See Application of Sinclair, 33 Misc.2d 226, 225 N.Y.S.2d 668 (Sup. Ct. 1962); Application of Motor Vehicle Accident Indemnification Corp., 227 N.Y.S.2d 868 (Sup. Ct. 1961); Application of Caits, 38 Misc.2d 522, 237 N.Y.S.2d 287 (Sup. Ct. 1962); Application of Graber, *386 38 Misc.2d 969, 239 N.Y.S.2d 332 (Sup. Ct. 1963); Application of Edwards v. Motor Vehicle Accident Indemnification Corp., 25 A.D.2d 420, 266 N.Y.S.2d 460 (App. Div. 1966).
A qualified nonresident, under § 601(b) (2), is "A resident of another state, territory or federal district of the United States or province of the Dominion of Canada, or foreign country, in which recourse is afforded, to residents of this state, of substantially similar character to that provided for by this article, or his legal representative." Excepting the words "or his legal representative," the language of § 601 (b) (2) is identical with that contained in N.J.S.A. 39:6-62. It is clear that each state provides a nonresident substantially similar relief, and that reciprocity exists. A New Jersey resident, involved in an accident in New York with an uninsured vehicle, would not be treated differently from a New York resident similarly involved in this State. The limitation of qualification to one other than an insured, though applicable to residents under § 601 (b) (1), is not contained in § 601(b) (2), dealing with non-residents.

II
Counsel for Mrs. Feliciano advised the court at oral argument of the insurer's intent to pay over the proceeds of its policy. He also expressed his belief that the insurer would waive any claim to reimbursement from moneys received from the Fund. The court gave counsel time to procure such waiver, but the insurer, on advice of its counsel, has declined to furnish it. The applicant's position, notwithstanding, as expressed in Mrs. Feliciano's supporting affidavit, is that "the amount and amounts which may be received or collectible under `Coverage J' etc., are not deductible under the Unsatisfied Claim and Judgment Fund law, from any moneys which may be due to plaintiff applicant, and that in the event of payment to any person under said Part IV, the insurer shall not be entitled to the *387 extent of such payment to the proceeds of said judgment dated May 28, 1968."
The claimant cites the case of Pearson v. State of North Dakota Unsatisfied Judgment Fund, 114 N.W.2d 257 (N.D. Sup. Ct. 1962), as being on all fours with the one at bar. In that case plaintiff, who had been injured in a collision with an uninsured automobile while riding as a passenger in an insured car, obtained a judgment against the uninsured tortfeasor and then sought recovery from the Fund, although she had collected a sum equal to the amount of the judgment under the uninsured motorist coverage of her host's policy. The court held that since the insurance moneys did not constitute collection of part of the judgment, the amount could not be deducted from the proceeds of the Fund.
Pearson is distinguishable at least by the fact that the insurer had waived its right of subrogation, so that any claim for reimbursement and the effect thereof were not in issue. Furthermore, the North Dakota statute, at that time, entitled a judgment creditor to apply to the court for an order directing payment of the judgment out of the Fund, merely upon a showing that judgment had been obtained for damages arising out of the debtor's ownership, maintenance, operation or use of a motor vehicle in the state; that execution had been issued and returned unsatisfied; that the amount realized on the sale of property that may have been seized was insufficient; that the debtor had been examined to determine his assets as well as the existence of automobile insurance, and that an exhaustive search and inquiry to discover assets was unsuccessful. The only limitation on the amount payable from the Fund was that "In cases where the judgment creditor has effected the collection of a part of his judgment from any source, the amount authorized to be paid from such fund shall be the difference between the amount of the judgment, provided that it does not exceed five thousand dollars, and the amount realized thereon." There were no provisions comparable to those contained in *388 subsection (l) and (m) of N.J.S.A. 39:6-70. It is of interest to note that the North Dakota statute has since been amended so as to require the deduction of moneys received from an uninsured motorist policy and to prohibit the assignment or subrogation of the right to recover from the Fund.
In any event, the opposition does not contend that the insurance proceeds are subject to N.J.S.A. 39:6-71, which requires the deduction only of "Any amount which the plaintiff has received or can collect by way of payments upon the judgment or by way of settlement of the cause of action, in whole or in part, from or on behalf of any person other than the judgment debtor * * *" (emphasis supplied). It is agreed that the proceeds here are not from or on behalf of any other person against whom a cause of action existed. See also N.J.S.A. 39:6-70(m).
The issue is not whether the moneys received or to be received are deductible; it is whether the claimant entitled to such moneys in the circumstances of this case is eligible to make further claim against the Fund.

III
The Fund urges that the provisions of subsection (l) of N.J.S.A. 39:6-70 are applicable in that there exists a policy of liability insurance under the terms of which the insurer is liable to pay, in whole or in part, the amount of the judgment, and that the money sought will be paid to an insurer to reimburse or otherwise indemnify it in respect to any amount paid or payable by it by virtue of such policy. Therefore, it is contended, the applicant is not eligible to be paid by the Fund. The opposing assertion is that the uninsured motorist provision of the policy does not impose upon the insured liability for the amount of the judgment. It is argued that under the policy the determination of whether the insured is legally entitled to recover damages, and the amount thereof, is to be made by agreement between the insured and the company or by arbitration; consequently, the *389 obligation of the insured is only to pay such sums as may be determined by agreement or arbitration and not by judgment resulting from litigation between the insured and the tortfeasor.
The Supreme Court of Appeals of Virginia, construing the uninsured motorist law of that state in the case of Horne v. Superior Life Ins. Co., 203 Va. 282, 123 S.E.2d 401 (1962) held:
"It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. Here, Aetna (the uninsured motorist carrier) does not stand in the shoes of Washington (the uninsured motorist). Its policy does not insure Washington against liability. It insures [those] protected under the policy against inadequate compensation. Aetna's liability to its insured is contractual, even though it is based upon the contingency of a third party's tort liability, and [the] employer, Superior [or its insurance carrier], does not become a third party [temporary] under the insurance contract."
The applicability of subsection (l) depends upon the existence of a policy of insurance whereby the insurer is liable to pay, in whole or in part, the amount of the judgment. Since the policy in question does not insure the tortfeasor, and since the liability of the insurer depends upon its agreement with the insured or arbitration, it cannot be said that the insurer is liable to pay, in whole or in part, the judgments obtained in behalf of the Riveras. It is apparent, therefore, that subsection (l) does not determine the eligibility, or lack thereof, of the applicant in this case.

IV
The critical determination to be made is the status of the applicant; that is, whether she is a member of a class intended to be benefited by the statute.
Incorporated in the policy of insurance issued to Rivera was a "Trust Agreement" which provided that in the event *390 of payment made to any person by reason of the uninsured motorist coverage:
"(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any right of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;
(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this Part;
(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;
(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;
(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision."
The trust agreement creates a right of subrogation. The insurer is unequivocally entitled to the proceeds of any settlement or judgment resulting from the exercise by the insured of a right of recovery against the tortfeasor. The right of recovery is held in trust by the insured for the benefit of the insurer. It is clear that the application now before the court, though ostensibly that of a judgment creditor, is actually made by one acting as trustee for and in behalf of the insurer.
The applicant's contention that the insurer would have no right to moneys received from the Fund is specious. Such payments, were they to be made, would, in the words of the trust agreement, "result from the exercise of any rights of recovery" against a person legally responsible for the bodily injury.
The purpose of the Fund is to provide a measure of relief to persons who sustain losses or injury inflicted by *391 financially irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless. Dixon v. Gassert, 26 N.J.L. 5 (1958); Corrigan v. Gassert, 27 N.J. 227, 233 (1958); Douglas v. Harris, 35 N.J. 270, 279 (1961); Moan v. Coombs, 47 N.J. 348, 351 (1966); Licata v. Lutz, 48 N.J. 255, 258 (1961); Holmberg v. Aten, 68 N.J. Super. 73, 83 (App. Div. 1961); Parrot v. Chiselko, 74 N.J. Super. 138, 142 (App. Div. 1962); Dietz v. Meyer, 79 N.J. Super. 194, 196 (App. Div. 1963); Downing v. Stewart, 85 N.J. Super. 62, 66 (App. Div. 1964); Wharton v. Knox and U.C. & J.F. Board, 98 N.J. Super. 61 (App. Div. 1967), certification denied 51 N.J. 186 (1968); Proskurnja v. Elder, 73 N.J. Super. 466, 473-474 (Law Div. 1962); Selimo v. Hartshorn, 99 N.J. Super. 146, 157 (Law Div. 1968); Lindsay v. Boles, 61 N.J. Super. 516, 519 (Cty. Ct. 1960).
The Fund is held in trust for the stated purposes and for the costs of administration. Wormack v. Howard, 33 N.J. 139, 143 (1960). The public interest demands that the Fund be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom. This is a duty imposed by public policy and owed to the contributors as well as to the general public. Douglas v. Harris, supra. The judiciary of this State is the guardian of the trust moneys represented by the statutory Fund. Szczesny v. Vasquez, 71 N.J. Super. 347, 358 (App. Div. 1962).
Obviously, losses and damages were inflicted upon the Rivera family by a financially irresponsible operator of a motor vehicle. Nevertheless, it does not appear that they are remediless. The creation of an Unsatisfied Claim and Judgment Fund such as ours has not been the only solution to the social problem of compensating victims of a negligent, uninsured and judgment-proof motorist. There has also been formulated for inclusion in automobile policies, as in New York, where such provision is mandatory, uninsured motorist coverage designed to afford payment to the insured, within *392 prescribed limits, of all sums which he or his legal representative is legally entitled to recover as damages from the owner or operator of an uninsured automobile. See Donaldson, "Uninsured Motorist Coverage," Insurance L.J., (January, 1967); Annotation, "Liabilities under `Uninsured Motorists Coverage,'" 79 A.L.R.2d 1252. Although the Fund is financed from additional registration fees levied upon uninsured vehicles and assessments against insurers, whereas uninsured motorist coverage is a contractual relationship between the insurer and the insured providing protection for which a premium is charged, the end result is the same.
The Fund is not intended to make every claimant whole, but only to provide some measure of relief to those persons who come within the class intended to be protected; and before coverage can be extended to any applicant he must clearly demonstrate that he is a member of the class for whose benefit the Fund was established. Wormack v. Howard, supra.
It is the view of the court that a result which would permit the applicant to receive moneys from the Fund and then transmit them to the insurer would be repugnant to the spirit, if not the letter, of the statute, and would thwart the purpose for which the Fund was created. A statute will not be construed so as to reach an absurd or anomalous result. Robson v. Rodriquez, 26 N.J. 517, 518 (1958). It is the proper function of the judiciary to give effect to the obvious intent of the Legislature, and to that end words used may be expanded or limited according to the manifest reason and purpose of the law. New Capitol Bar & Grill Corp. v. Division of Employment Security, 25 N.J. 155, 160 (1957); Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956); Wright v. Vogt, 7 N.J. 1, 6 (1951); Glick v. Trustees of Free Public Library, 2 N.J. 579, 584 (1949); Schock v. Board of Review, Div. Empl. Sec., 89 N.J. Super. 118, 124 (App. Div. 1965).
*393 The applicant's right to receive compensation from the insurer, the amount of which in this case is equal to the limits of the Fund, coupled with the terms of the trust agreement, leads to the conclusion that no further claim can be made against the Fund. She does not seek payment in her own behalf; she is acting for and as the alter ego of the insurer. In short, the applicant is for all practical purposes the insurer. The Unsatisfied Claim and Judgment Fund was not designed to benefit that class.
In the case of Tschider v. Burtts, 149 N.W.2d 710 (1967), the North Dakota Supreme Court held, in a comparable situation, as follows:
"The insureds' right to recover from the Fund no longer exists in this case because they assigned their rights to the insurer. The insurer paid the full amount of their respective claims for damages sustained because of bodily injuries suffered as a result of an automobile accident in which the uninsured financially irresponsible wrongdoer was the driver, and recovered judgment against the wrongdoer for the full amount it paid out. The insureds have received full compensation for the injuries suffered. There is nothing in the terms of the Unsatisfied Judgment Act that indicates an intention to relieve an insurer of its responsibility for its own contractual obligation or to reimburse an insurer for payments made under its insurance contract. The purpose of the Fund was not to set up a free reinsurance plan for insurers of those who have suffered bodily injury by financially irresponsible motorists. The Unsatisfied Judgment Fund was established in North Dakota in 1947 (Chapter 274, Session Laws of 1947). Uninsured motorists' coverage at that time was virtually unknown, if not completely unknown. It cannot be said the legislature considered uninsured  motorist coverage at the time the Unsatisfied Judgment Fund Act was passed. In our opinion, the insurer did not acquire a right under the Unsatisfied Judgment Act for an order directing payment of its judgment out of the Unsatisfied Judgment Fund. The Ontario Court of Appeal, under a statute similar to ours, come to the same conclusion. Merkur v. Wilson's Transport, Ltd., 1955, Vol. 5 D.L.R., page 778."
The application for payment by the Fund, made in behalf of Petra Feliciano in her several representative capacities, is dismissed.
The applications for payment by the Fund, made in behalf of the Bradford, Bush and Simmons estates, are granted. *394 Since the judgments exceed the allowable limits prescribed in N.J.S.A. 39:6-69(b), the three claimants are entitled to a total amount of $20,000, that sum to be prorated among them. See Garcia v. Morales, 47 N.J. 269 (1966).
An order will be presented, consented to as to form, or settled on notice, disallowing the application made in behalf of Petra Feliciano and directing the Treasurer to make payment from the Fund to the representatives of the Bradford, Bush and Simmons estates on a prorated basis.